JOSEPH WHEELER *vs.* CITY OF BOSTON & others.
JAMES F. KIMBALL *vs.* HEALTH COMMISSIONER OF THE CITY OF BOSTON & another.

Suffolk.   March 11, 12, 1919. — June 24, 1919.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Board of Health,* Municipal.   *Garbage.   Municipal Corporations.*

It is within the limits of the police power for a municipality, acting for the common good of all, either to take over itself or to confine to a single person or corporation the collection, transportation through its streets and final disposition of garbage, which is an actual and potential source of disease and a detriment to the public health and may easily become a public nuisance.

An ordinance of the city of Boston, providing that "No person, other than employees of the city, . . . shall in any street carry . . . house offal or other refuse matter . . . except in accordance with a permit from the commissioner of public works

approved by the board of health," and a regulation by the board of health, adopted as a health measure because of difficulty experienced in placing responsibility for nuisances created by failure of some persons theretofore holding permits to collect garbage regularly and in a sanitary manner, but who were irregular, slovenly and offensive in their methods, which regulation prohibited the transporting of garbage through the public ways of the city except by the city or its contractors and their agents, are justifiable as reasonable exercises of the police power.

Accordingly, where the city officials, acting in good faith, have issued a permit to collect and dispose of the city's garbage to a corporation which acts under a contract with the city and for its own profit, a petition for a writ of mandamus cannot be maintained to compel them also to issue to a farmer in a nearby territory a permit to collect garbage at certain hotels and restaurants and to transport it to his farm, although the petitioner has had such a permit from the city for years, has done the work in a careful and entirely satisfactory manner and without offence to the senses or harm to the health of the community, and suffers a pecuniary loss by being deprived of the privilege of continuing to do so.

PETITIONS, filed on May 23, 1918, and afterwards amended, against the city of Boston, its commissioner of public works and its health commissioner for writs of mandamus directing the granting and approving of permits to the petitioners to convey garbage through the streets of Boston.

The cases were ordered to be tried together and were referred to an auditor. The auditor filed a report and, upon recommittal, a supplementary report, and the cases then were heard by *Braley, J.,* upon the petitions and answers, certain facts agreed to and the auditor's reports. He found the facts as they were stated in the auditor's reports, which facts are described in the opinion, and reported the cases to the full court for determination.

*C. P. Sampson & C. F. Eldredge,* for the petitioners.

*J. P. Lyons,* for the respondent city of Boston and others.

*J. A. Sullivan,* for the respondent Boston Development and Sanitary Company.

RUGG, C. J. These are petitions for writs of mandamus. They are brought to compel the appropriate public officers of the city of Boston to grant and approve permits to the petitioners, who are farmers doing business in neighboring towns, to convey garbage through the streets of Boston on its way to their farms, there to be fed to swine.

The pertinent facts are, that the petitioners have for the collection and transportation of garbage modern and sanitary appliances, which are kept clean and wholesome, and that they have

been accustomed for several years to do this work in a careful and entirely satisfactory manner without offence to the senses or harm to the health of the community. They have made mutually advantageous arrangements for the collection of their garbage with the proprietors of certain large hotels and restaurants in Boston, who desire to have the petitioners continue to do this work. The petitioners have been granted permits from the municipal officers of Boston for several years. Their methods in the use of the permits have always been approved by the health authorities. In 1912 the city of Boston made a contract with the Boston Developing and Sanitary Company, one of the defendants, wherein it agreed to collect garbage from the part of Boston wherein are located the hotels and restaurants from which the petitioners have been collecting garbage, and to deliver it to that company at designated stations. This contract is still in force. In 1914 the city of Boston made a contract with the same company for the collection of hotel and restaurant garbage within the same area. That company has a reduction plant at Spectacle Island in Boston Harbor and declines to permit the petitioners to collect garbage under its patronage.

By R. L. c. 25, § 14, a city may make contracts "for the disposal of its garbage." R. L. c. 26, § 2. *Clarke* v. *Fall River*, 219 Mass. 580, 583.

It is provided by the Revised Ordinances of Boston of 1914, c. 40, § 14, that "No person, other than employees of the city, . . . shall in any street carry . . . house-offal or other refuse matter . . . except in accordance with a permit from the commissioner of public works approved by the board of health." In 1914 the board of health of Boston passed this regulation: "At a meeting of the Board of Health held this day, it was voted to adopt the following regulations: Whereas, kitchen swill and garbage in the City of Boston are a source of filth and are capable of containing and of conveying contagion and of creating sickness, thereby endangering the public health and safety; and, Whereas, in the opinion of the Board, municipal collection and removal of the entire mass of kitchen swill and garbage in the City of Boston is necessary to preserve the public health and safety; Ordered, that no person, firm or corporation, other than the City of Boston or the city contractors or their agents, shall carry, convey or

transport through the alleys, streets or public places of the City of Boston any kitchen swill or garbage consisting of any refuse accumulation of meat, fish, fowl, fruit or vegetable matter." This regulation was adopted for the reasons therein set forth as a health measure because of difficulty experienced in placing responsibility for nuisances created by failure of persons theretofore holding permits, other than the petitioners, to collect garbage regularly and in a sanitary manner, but who were irregular, slovenly and offensive in their methods.

After the passage of this regulation the commissioner of public works refused to issue permits to the petitioners, not because they did not or were not able to comply with all proper rules respecting the collection of garbage, and not because of any complaint against their methods, but because he refused longer to issue any permits to any such persons. The board of health refuses to act in behalf of the petitioners. No permits to transport garbage through the streets of Boston have been granted since the adoption of the regulation by the board of health.

The situation as summarized by the auditor is this: "There is little controversy as to the facts. The city, having the responsibility of removing or causing to be removed offal and garbage that may be a menace to the public health, has adopted a system both of removal and disposal, employing as its agencies its own employees, its contractors, and the Boston Development and Sanitary Company, and as its agent for disposal it has adopted the Boston Development and Sanitary Company under a contract. In order to carry out and make effective its policy, it has undertaken to refuse permission to anybody except one of its own agencies to transport garbage through the streets. The Boston Development and Sanitary Company has erected a large reduction plant on Spectacle Island, and furnished scows for the transportation of garbage from the water-front stations to the Island. At the Island it treats all the garbage by a 'reduction' process, and extracts from it grease, oil, and other products of commercial value. The garbage is therefore of value to it."

There is nothing in the record which requires the inference that there is any bad faith in any of the conduct of the city officers. The natural import of all the facts is that the regulation

has been passed and enforced in an honest effort to conserve the public health and promote the general welfare.

The petitioners denounce the action of the commissioner of public works and of the board of health in refusing to grant them permits as unreasonable, and the enforcement of the regulation of the board of health as an unauthorized exercise of the police power.

The regulation of the board of health was passed under the authority conferred by R. L. c. 75, § 65, which requires that the board of health "Shall examine into all nuisances, sources of filth and causes of sickness within its town . . . which may in its opinion be injurious to the public health . . . and shall make regulations for the public health and safety relative thereto and relative to articles which are capable of containing or conveying infection or contagion or of creating sickness which are brought into or conveyed from its town." This section has been treated as applying to the board of health of Boston. *Train* v. *Boston Disinfecting Co.* 144 Mass. 523. *Commonwealth* v. *Drew*, 208 Mass. 493. See *Lynn* v. *County Commissioners*, 153 Mass. 40.

It was held in *Vandine, petitioner*, 6 Pick. 187, that a by-law forbidding the removal of house dirt and offal from Boston, except by those duly licensed, was a valid exercise of the police power in the interest of the public health. Much the same arguments there were considered and disposed of as have been urged by the present petitioners. That case goes far toward the decision of the case at bar. To the same effect is *Schultz* v. *State*, 112 Md. 211.

The precise question here presented has never arisen in this Commonwealth. It has been decided, however, in numerous other jurisdictions. An exactly similar case in principle, and one remarkably like it in all salient facts, is *Gardner* v. *Michigan*, 199 U. S. 325, 331, 332. It there was said: "The court may well take judicial notice that table refuse when dumped into receptacles kept for that purpose will speedily ferment and emit noisome odors, calculated to affect the public health. . . . The defendant insists that it is part of the common knowledge of the country that the refuse from kitchens, tables, hotels and restaurants is valuable as food for swine, and is property within the meaning of the constitutional provision which forbids the taking by any

State of private property for public use without compensation. Of course, all know that such a use of refuse is not uncommon in some localities. . . . Looking at the matter in a practical light, we are unable to say that the means devised by the city council and indicated by its action were plainly unreasonable or unnecessary or did not have a real, substantial relation to the protection of the public." It has been found by the auditor that title to the garbage rested in the petitioners. So far as concerns the property rights of the petitioners in the garbage after they had taken it from the hotel and restaurant keepers, it may be disposed of by what was said in the same opinion at page 333: "If it be said that the city might have adequately guarded the public health and at the same time saved the property rights of its owner on whose premises garbage and refuse were found, the answer is that the city evidently thought otherwise, and we cannot confidently say that its constituted authorities went beyond the necessities of the case and exceeded their proper functions when they passed 'the ordinance in question." This decision was rested in part upon *California Reduction Co.* v. *Sanitary Reduction Works*, 199 U. S. 306, where at page 322 it was said respecting the rights of the collector of garbage: "Still less has the licensed scavenger a right to complain; for his right to convey garbage and refuse through the public streets, in covered wagons, was derived from the public, and he was subject to such regulations as the constituted authorities, in their exercise of the police power, might adopt." The exact point here presented was decided in *Rochester* v. *Gutberlett*, 211 N. Y. 309, after a full discussion, in favor of the validity of the ordinance. The underlying principle upon which were decided the *Slaughter-House Cases*, 16 Wall. 36, supports the validity of the present regulation. Other decisions upon facts almost identical with those at bar and which uphold the reasonableness of the regulation, are *Dupont* v. *District of Columbia*, 20 App. D. C. 477, *State* v. *Orr*, 68 Conn. 101, 110, *Walker* v. *Jameson*, 140 Ind. 591, *Atlantic City* v. *Abbott*, 44 Vroom, 281, *Grand Rapids* v. *De Vries*, 123 Mich. 570, *O'Neal* v. *Harrison*, 96 Kans. 339, *Smiley* v. *MacDonald*, 42 Neb. 5, *Smith* v. *Spokane*, 55 Wash. 219, *Ex parte Howell*, 71 Tex. Cr. Rep. 71. So far as we are aware, there are no contrary decisions.

These decisions rest in general upon the idea that garbage is

widely regarded as an actual and potential source of disease or detriment to the public health, and that therefore it is within the well recognized limits of the police power for the municipality, acting for the common good of all, either to take over itself or to confine to a single person or corporation the collection, transportation through the streets and final disposition of a commodity which so easily may become a nuisance. Private interests must yield to that which is established for the general benefit of all. *Commonwealth* v. *Alger*, 7 Cush. 53. *Commonwealth* v. *Wheeler*, 205 Mass. 384. *Commonwealth* v. *Titcomb*, 229 Mass. 14.

Of course police regulations must be reasonable both as to the end sought and the means employed. But in view of this great weight of authority in support of the validity of the regulation here assailed, it does not seem necessary to discuss the matter further, or to review and distinguish cases where the exercise of police power as to other objects has been held to transcend constitutional limitations.

Let the entry in each case be

*Petition dismissed.*