GEORGE G. WRIGHT & others *vs.* MAYOR AND CITY COUNCIL OF CAMBRIDGE.

Middlesex. January 18, 1921. — May 25, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, & JENNEY, JJ.

*Equity Jurisdiction,* Suit by ten taxable inhabitants of a town under R. L. c. 25, § 100. *Eminent Domain. Way,* Public: layout. *Municipal Corporations.*

In a bill in equity by ten taxable inhabitants of the city of Cambridge under R. L. c. 25, § 100, to enjoin the mayor and city council from raising and expending money or incurring obligations for the purpose of extending a public way in order to facilitate the leasing of " The Front," the alteration of the use of which, under St. 1913, c. 393, Spec. Sts. 1917, c. 223; 1919, c. 79, from a public to a private use was held in *Wright* v. *Walcott, ante,* 432, not to be invalid, it was alleged that the statement of public necessity and convenience as the reason for taking the land for the street extension is " merely colorable and is not made in good faith; that the sole motive . . . is in truth to render the said city land called ' The Front ' more desirable as a site which may be leased by said city to private persons for private business purposes; that the alleged reason for said taking and extension, to wit, public convenience and necessity, is a mere pretence, and that the dominant purpose of said taking and extension is not for a public purpose, and that, masking under the pretext of a public purpose, and under the guise and color of the right and power of eminent domain, the said mayor and said city council, and each of them, are arbitrarily attempting to exercise power and authority not legally granted to them, or either of them, and that they, and each of them, are in reality attempting to take by the alleged right and power of eminent domain private property for what is essentially and dominantly a private purpose." *Held,* that

(1) Giving the averments of the bill their full force, they amounted to nothing more than allegations that the public necessity and convenience to be subserved by the proposed street extension is the business and commercial development of " The Front " property, which lawfully is now to be appropriated to business uses;

(2) One important and often determining factor in the decision whether a street shall be laid out or extended is the accommodation of commercial traffic;

(3) The bill could not be maintained.

BILL IN EQUITY, filed in the Supreme Judicial Court on January 5, 1920, by ten taxable inhabitants of the city of Cambridge, and afterwards amended, seeking to enjoin the mayor and city council of Cambridge from raising or expending money, or attempting to raise or expend money, and from incurring obligations or attempting to incur obligations, for the purpose of extending Monroe Street in the circumstances described in the opinion.

The defendants demurred on the following grounds: "(1) Because the plaintiffs have not stated in their bill such a cause as entitles them to the relief in equity prayed for. (2) Because the plaintiffs' bill recites that the land proposed to be taken by eminent domain is to be used as a public highway and the plaintiffs seek to have this court inquire into the motives which actuate the mayor and city council in taking by eminent domain land to be used for an admitted public purpose."

The demurrer was heard by *Crosby, J.,* by whose order there were entered an interlocutory decree sustaining the demurrer and a final decree dismissing the bill. The plaintiffs appealed.

*F. J. Carney,* for the plaintiffs.

*P. J. Nelligan,* for the defendants.

RUGG, C. J. This is a suit in equity brought by ten taxable inhabitants of the city of Cambridge to restrain the mayor and city council from raising and expending money or incurring obligations for the purpose of extending Monroe Street as a public way. Summarily stated, the ground on which relief is sought is that the defendants as public officers are undertaking to extend the street in order to facilitate the leasing of land heretofore taken for a public park, the use of which now is to be altered from that confessedly public to the indubitably private one of commercial and business enterprises in private hands. The land thus to be rendered more accessible by the proposed street extension is "The Front," so called, under consideration in *Wright* v. *Walcott, ante,* 432, just decided. The facts there narrated, so far as here pertinent, need not be repeated. The crucial averments are that the statement of public necessity and convenience as the reason for taking the land for the street extension is "merely colorable and is not made in good faith; that the sole motive . . . is in truth to render the said city land called 'The Front' more desirable as a site which may be leased by said city to private persons for private business purposes; that the alleged reason for said taking and extension, to wit, public convenience and necessity, is a mere pretence, and that the dominant purpose of said taking and extension is not for a public use, and that, masking under the pretext of a public purpose, and under the guise and color of the right and power of eminent domain, the said mayor and said city council, and each of them, are arbitrarily attempting to exercise power and

authority not legally granted to them, or either of them, and that they, and each of them, are in reality attempting to take by the alleged right and power of eminent domain private property for what is essentially and dominantly a private purpose."

The grounds on which rests the decision just rendered in *Wright* v. *Walcott* go far toward the settlement of the issues raised in the case at bar. The alteration of the use of "The Front" from a public to private use has been held not invalid. It may be assumed that "the purpose for which a way is laid out may be inquired into, in order to show that it was illegal." *Higginson* v. *Nahant,* 11 Allen, 530, 534. *Wheelock* v. *Lowell,* 196 Mass. 220, 224, 225. *Lynch* v. *Forbes,* 161 Mass. 302, 308, 309. *Wheeler* v. *Boston,* 233 Mass. 275, 278. *Boston* v. *Talbot,* 206 Mass. 82. *Flood* v. *Hodges,* 231 Mass. 252. It is not necessary now to delimit that doctrine. Giving the averments of the bill their full force, they amount to nothing more than allegations that the public necessity and convenience to be subserved by the proposed street extension is the business and commercial development of "The Front" property, which lawfully is now to be appropriated to business uses. Manifestly one important and often determining factor in the decision whether a street shall be laid out or extended is the accommodation of commercial traffic.

*Bill dismissed.*