COMMONWEALTH *vs.* E. E. WILSON COMPANY.

Suffolk.    April 12, 1922. — May 19, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Board of Health,* Municipal: health commissioner of Boston.    *Boston.    Food.*
    *Constitutional Law,* Police regulation.

An order or regulation, "that in all establishments where eggs are handled for food
    or mechanical purposes all 'rot' and 'spot' eggs shall be immediately placed
    in a water-tight metal container, provided with cover, containing a solution
    of carbolic acid of a strength of at least five per cent, or a denaturant of an
    equivalent strength, therein denatured by mixing them thoroughly," which was
    issued in February, 1918, by the health commissioner of the city of Boston, in
    charge of the health department of the city, was within the authority given by
    R. L. c. 75, § 65 (see now G. L. c. 111, § 122); and this authority was not
    curtailed by St. 1914, c. 627, which contained no express nor implied repeal of
    R. L. c. 75, § 65.
An order of a health department promulgated under G. L. c. 111, § 122, is not
    invalid by reason of the fact that it requires precautions to avoid possible danger
    to the public health as well as measures to restrict conditions actually harmful.
Evidence, offered by a corporation being tried upon a complaint for violation of the
    regulation above described, that it was compelled to break the eggs before selling
    them for manufacturing purposes and that the regulation destroyed a well known
    commercial product and deprived the defendant of its property without due
    process of law, that other dealers, instead of breaking their own eggs, sold them
    in the shell "to breakers to be carried away to breaking establishments" and
    that the eggs described in the regulation in their condition of rottenness could
    be sold to tanners for use in softening certain kinds of leather, properly was
    excluded, since the opening and retention of such eggs, undenatured, for any
    purposes could be found detrimental to the public welfare and the regulation
    was a reasonable one going no further than limiting the use of property in the
    interest of the health of the community.
The regulation above described was not in conflict with any provision of the State
    or of the Federal Constitution.

COMPLAINT, received and sworn to in the Municipal Court of
the City of Boston on July 17, 1918, charging that the defendant
on June 24, 1918, at its establishment, a certain shop wherein
eggs were handled by it for food purposes, did "handle certain
'rot' and 'spot' eggs, so called, and did not then and there immedi-
ately upon the handling of said 'rot' and 'spot' eggs as aforesaid,
place the same in a water-tight metal container provided with
cover and containing a solution of carbolic acid of strength at

least five per cent., nor a denaturant of an equivalent strength, nor therein denatured by mixing said 'rot' and 'spot' eggs thoroughly in said container, against the peace of said Commonwealth, the form of the statute and the rule and regulation of the health commissioner of said city in such case made and provided."

On appeal to the Superior Court, the complaint was heard before *Sanderson,* J. The regulation of the health commission was as follows:

"In health department, Boston, February 21, 1918. Regulation Concerning the Denaturing of 'Rot' and 'Spot' Eggs: It was ordered by the Health Commissioner that the regulation of September 6th, 1917, concerning the denaturing of 'rot' and 'spot' eggs be amended by striking out the words 'in a manner satisfactory to the Health Commissioner or his agents,' so as to read as follows: 'It is hereby ordered by the Health Commissioner that in all establishments where eggs are handled for food or mechanical purposes all "rot" and "spot" eggs shall be immediately placed in a water-tight metal container, provided with cover, containing a solution of carbolic acid of a strength of at least 5 per cent., or a denaturant of an equivalent strength, and therein denatured by mixing them thoroughly. All said containers so used shall be plainly and conspicuously marked: "EGGS FOR MECHANICAL PURPOSES ONLY; NOT FOR FOOD," in letters of uncondensed gothic type, not less than one inch in height.'"

The defendant made the following offers of proof:

"1. The defendant offers evidence to prove that 'rot' and 'spot' eggs are obtained in lighting or candling eggs before eggs are offered for sale for food purposes; that the majority of places candling eggs and selling same for food purposes deal in other food products but do not 'break' 'rots' and 'spots' for mechanical purposes, but sell such 'rots' and 'spots' in the shell to breakers to be carried away to breaking establishments.

"2. The defendant offers evidence to prove that compliance with the regulation would result in a condition or conditions so noxious that it would be impracticable to conduct the business of selling eggs for food or other products for food in the same store or place of business.

"3. The defendant offers evidence to prove that 'rot' and 'spot'

eggs contain egg oil; that such oil has great commercial value to tanners for use in softening certain kinds of leather and performs one function in the manufacture of leather which for such purpose there is no known substitute; that compliance with this regulation would destroy the value of such eggs for this or any other commercial use.

"4. The defendant offers evidence to prove that by the use of a certain denaturant on the egg in the shell, 'rot' and 'spot' eggs can be commercially destroyed in the shell without noxious odors or destroying them for commercial purposes other than food."

The evidence offered was excluded, subject to exceptions by the defendant. Material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings:

"1. That upon the facts as proved by the government there is no evidence upon which the defendant can be found guilty.

"2. That upon all the evidence the court direct a verdict of not guilty.

"3. That if the regulation is made upon the authority of R. L. c. 75, § 65, said regulation is invalid and void in that the same is unreasonable and not within the exercise of any police power of the health commissioner of the city of Boston.

"4. That the regulation upon which the complaint is founded is invalid and void in that the same is in violation of the limitations and restrictions of the Constitution of the Commonwealth and of the United States.

"5. That chapter 627 of the Acts of 1914 creates the only authority in the health commission of the city of Boston to make such general regulation relating to food products and the health commission has not complied with the provision of this act in the regulation at bar."

The rulings were refused subject to exceptions by the defendant. At the conclusion of the evidence the jury were instructed by the judge to return a verdict of guilty, with the consent of the defendant, saving all its rights, and upon the understanding and agreement that, if the trial judge had erred in excluding any of the evidence offered on behalf of the defendant or in refusing to give any of the rulings requested by the defendant, the verdict should be set aside; otherwise, that the verdict should stand. The judge reported the case for determination by this court.

The case was submitted on briefs.

*J. F. Cusick,* for the defendant.

*D. M. Lyons,* Assistant District Attorney, for the Commonwealth.

BRALEY, J.  The order or regulation of the health commissioner of the city of Boston, "that in all establishments where eggs are handled for food or mechanical purposes all 'rot' and 'spot' eggs shall be immediately placed in a water-tight metal container, provided with cover, containing a solution of carbolic acid of a strength of at least five per cent., or a denaturant of an equivalent strength, therein denatured by mixing them thoroughly," having been promulgated, the questions are, whether it is lawful, and if so whether there was any evidence for the jury of its violation by the defendant.

It is settled by the recent case of *Wheeler* v. *Boston,* 233 Mass. 275, that R. L. c. 75, § 65 (see now G. L. c. 111, § 122), conferred authority upon the board of health to pass such an order for the preservation of the public health.  But by force of the revised ordinances of the city the health department is under the charge and control of a health commissioner who performs the duties, and exercises all the authority of the board of health.  This authority is not curtailed by St. 1914, c. 627, which contains no express or implied repeal of R. L. c. 75, § 65.  The order therefore was regularly issued.

It is urged however that the defendant was compelled to break the eggs before selling them for manufacturing purposes, and it offered evidence and made offers of proof tending to show that the regulation destroyed a well known commercial product, and deprived the defendant of its property without due process of law.  The evidence and offers of proof were excluded rightly.  It was undisputed that the eggs in question "were decomposed 'spot' and black 'rot' eggs unfit for food, and no denaturant had been applied," and one Wilson the president, told the police officer who investigated the company's methods of business, that he did not intend to denature the rotten eggs, or to comply with the regulation.  The defendant company "were commission merchants dealing in butter, eggs and poultry for food," and also dealt in eggs in all stages of decay.  No discussion is required to point out that eggs constantly decomposing even though stored and opened

in a small adjoining room could be found to be a constant menace to the wholesomeness of the butter, eggs and poultry kept and sold for food. A regulative measure may require precautions to avoid possible danger, as well as to restrict conditions actually harmful. *Train* v. *Boston Disinfecting Co.* 144 Mass. 523.

It is also no defence that other dealers instead of breaking their own eggs sell them in the shell "to breakers to be carried away to breaking establishments." *Commonwealth* v. *New York Central & Hudson River Railroad*, 202 Mass. 394. It was optional with the defendant whether it would deal in rotten eggs which must be broken in connection with other food products which it stored and sold. If it decided to adopt this course of business then it must comply with the regulation which has no reference whatever to wholesome and merchantable eggs.

The opening and retention of such eggs undenatured for any purpose could also be found detrimental to the public welfare, even if in their condition of rottenness they could be sold to tanners for use in softening certain kinds of leather. The regulation goes no further in limiting the use of property in the interest of the health of the community, nor does it exceed in restrictive scope, regulations and statutes which have been sustained as not having been in excess of the necessities of the case as viewed by the Legislature, or the constituted authorities to whom its powers of regulation have been delegated. *Commonwealth* v. *Plaisted*, 148 Mass. 375. *Commonwealth* v. *Interstate Consolidated Street Railway*, 187 Mass. 436. *Commonwealth* v. *Sisson*, 189 Mass. 247. *Chase* v. *Proprietors of Revere House*, 232 Mass. 88, and cases cited. *Wheeler* v. *Boston*, 233 Mass. 275.

The regulation also is not in conflict with the Federal Constitution. The property of the defendant is neither taken nor destroyed, and there is no discrimination in favor of one dealer from another dealer engaged in the same business. *Barbier* v. *Connolly*, 113 U. S. 27. *Mugler* v. *Kansas*, 123 U. S. 623. *Murphy* v. *California*, 225 U. S. 623.

A verdict for the defendant could not have been ordered, and the other rulings requested were properly denied for reasons sufficiently stated. In accordance with the terms of the report the verdict is to stand.

*So ordered.*