CITY OF CINCINNATI ET AL. *v.* THE STATE, EX REL. MOOCK.

(Decided August 3, 1928.)

*Mr. John D. Ellis,* city solicitor, *Mr. Milton H. Schmidt* and *Mr. Ralph A. Kreimer,* for plaintiffs **in error.**

*Messrs. Pogue, Hoffheimer & Pogue* and *Mr. Walter M. Locke,* for defendant in error.

HAMILTON, P. J. The defendant in error, George B. Moock, brought an action in mandamus in the court of common pleas of Hamilton county, praying that a writ of mandamus issue commanding C. O. Sherrill, city manager of the city of Cincinnati, to issue, grant, and give to the relator a permit to remove, carry in or through the streets, etc., in Cincinnati, house dirt, house offal, animal and vegetable matter, or any refuse substance from dwelling houses, hotels, restaurants, and other places. He

alleges that Sherrill, the city manager, refuses to grant the permit for the purpose mentioned; that he is the owner, by contract with certain hotels and restaurants in the city, of certain offal, animal and vegetable matter and refuse substance; that the materials are not offensive or noxious or dangerous to life and comforts of society, nor detrimental to the health or interest of said city, and pleads that the material is of great monetary value; pleads the ordinance of the city which provides for issuing of permits; and pleads that the denial of the permit results in the taking of private property without compensation therefor in violation of the Constitution of the United States.

The defendants, plaintiffs in error here, admit the refusal to issue the permit by the city manager, and plead that the power exercised in the refusal was in the exercise of the sound discretion of the city manager.

Upon the trial of the case the court of common pleas granted the writ and ordered the city manager to issue the permit as prayed for. Defendants prosecute error to this court seeking a reversal of that judgment.

The real question in the case is to what extent can the city, in the exercise of police power, control the disposition and the manner and method of disposing of the garbage of the city.

Section 4326 of the General Code of Ohio provides:

"The director of public service shall manage municipal water, lighting, heating, power, garbage and other undertakings of the city  *  *  *."

Section 973 of the municipal ordinances of the

city of Cincinnati, as amended April 20, 1915, provides as follows:

"That no person shall remove or carry in or through any of the streets, squares, courts, lanes, avenues, places or alleys of the city of Cincinnati, any house dirt or house offal, animal or vegetable, or any refuse substance, from any of the dwelling houses or other places of the city, or carcass of any dead animal, unless the owner of the same shall have procured a permit so to do from the director of public service, prescribing the terms and conditions as may be deemed essential to the health and interests of the city. Provided, however, the provisions hereof shall not apply to any contractor with the city in relation to garbage," etc.

"It is hereby made the duty of the contractor with the city of Cincinnati for the collection and removal of garbage and dead animals, to collect and remove, in accordance with the ordinances and contract of the city, all garbage and refuse, animal, fish or vegetable matter found within the city limits; and also all dead animals which are not removed or disposed of by the owner in a lawful manner within a reasonable time, and not exceeding twelve (12) hours from the time of their death. Except as herein provided as to dead animals, no other person or party than the city contractor or its agents shall carry, convey or transport through the streets, alleys or public places of the city of Cincinnati such materials; and it shall be unlawful for any person to interfere in any manner with the collection and disposal of such materials by the city contractor."

The record discloses that the city entered into an exclusive contract with the Union Reduction Com-

pany for the disposal of all the garbage of the city. This contract is in force. It appears that Moock has entered into an arrangement with certain hotels in the city to remove their garbage in a manner which is modern and sanitary; that he pays a small sum per can for the refuse from the hotels, which he desires to convey through the streets of the city for feeding to his swine, located out of the city.

The precise question presented here has never been decided by courts of last resort in the state. There is some confusion in the decisions of the lower courts in this state. However, the question has frequently been before the courts of last resort in many of the states. The leading case on the question, as we view it, is *Wheeler* v. *City of Boston*, reported in 233 Mass., 275, 123 N. E., 684, 15 A. L. R., 275. That case is exactly parallel to the case under consideration. The opinion by Chief Justice Rugg in that case presents the law, together with the authorities, in a clear and concise manner, and is in accordance with our view of the law of this case. The syllabus of the *Wheeler case* covers all the points raised in the instant case, and is as follows:

"It is within the limits of the police power for a municipality, acting for the common good of all, either to take over itself or to confine to a single person or corporation the collection, transportation through its streets and final disposition of garbage, which is an actual and potential source of disease and a detriment to the public health and may easily become a public nuisance.

"An ordinance of the city of Boston, providing that 'No person, other than employes of the city,

\* \* \* shall in any street carry \* \* \* house offal or other refuse matter \* \* \* except in accordance with a permit from the commissioner of public works approved by the board of health,' and a regulation by the board of health, adopted as a health measure because of difficulty experienced in placing responsibility for nuisances created by failure of some persons theretofore holding permits to collect garbage regularly and in a sanitary manner, but who were irregular, slovenly and offensive in their methods, which regulation prohibited the transporting of garbage through the public ways of the city except by the city or its contractors and their agents, are justifiable as reasonable exercises of the police power.

"Accordingly, where the city officials, acting in good faith, have issued a permit to collect and dispose of the city's garbage to a corporation which acts under a contract with the city and for its own profit, a petition for a writ of mandamus cannot be maintained to compel them also to issue to a farmer in a nearby territory a permit to collect garbage at certain hotels and restaurants and to transport it to his farm, although the petitioner has had such a permit from the city for years, has done the work in a careful and entirely satisfactory manner and without offence to the senses or harm to the health of the community, and suffers a pecuniary loss by being deprived of the privilege of continuing to do so."

That the refusal to grant the permit is not a taking of property without compensation and in no way contravenes the Constitution was decided in the case of *California Reduction Co.* v. *Sanitary Re-*

*duction Works,* 199 U. S., 306, 26 S. Ct., 100, 50 L. Ed., 204, wherein it was held:

"An ordinance of competent municipal authorities based upon reasonable grounds for the cremation of garbage and refuse at a designated place as a means for the protection of the public health is not a taking of private property for public use without compensation within the meaning of the Federal Constitution even though such garbage and refuse may have some elements of value for certain purposes.

"The exclusive privilege granted to one company by the board of supervisors of San Francisco to dispose of the garbage in the city and county of San Francisco held not to be void as taking the property of householders for public use without compensation."

This proposition was reiterated in the case of *Gardner* v. *Michigan,* 199 U. S., 325, 26 S. Ct., 106, 50 L. Ed., 212. The same propositions are presented in *Pantlind* v. *City of Grand Rapids,* 210 Mich., 18, 177 N. W., 302, 15 A. L. R., 280, and the same holdings were made as in the case of *Wheeler* v. *Boston, supra.* Also to the same effect is the finding in the case of *City of Rochester* v. *Gutberlett,* 211 N. Y., 309, 105 N. E., 548, L. R. A., 1915D, 209, Ann. Cas., 1915C, 483, and many other cases cited by the court in the cases referred to.

The cases cited by counsel for defendant in error do not cover the point in question. Although there are some features somewhat similar to some of the questions presented, they do not reach the precise question involved here. One of these cases concerns dead animal cases. The dead animal propo-

sition was discussed in the cases of *People* v. *Gardner,* 136 Mich., 693, 100 N. W., 126, and *Pantlind* v. *City of Grand Rapids, supra,* holding that the law as to dead animals is not controlling in garbage cases.

Our conclusion is that it is within the police power of the city to control the disposal of the garbage of the city in the way that it does; that the city manager did not abuse his discretion in refusing to permit and granting the exclusive collection to an individual corporation, and that there is no violation of any constitutional rights of the relator.

The judgment will be reversed, and judgment will be entered here dismissing the relator's petition.

*Petition dismissed.*

MILLS and CUSHING, JJ., concur.