JAMES PORTER v. SUBURBAN SANITATION SERVICE, INCORPORATED, AND J. B. McBRYDE

— AND —

SANITATION SERVICE, INC. v. SUBURBAN SANITATION SERVICE, INC.; LAFAYETTE TRANSPORTATION SERVICE, INC., AND COOPER LOGAN D/B/A LOGAN DISPOSAL SERVICE AND J. B. McBRYDE

No 49

(Filed 1 June 1973)

1. Counties § 2— franchise for collection of "garbage" — authority granted to counties

2. Counties § 2— regulation of garbage disposal — statute inapplicable to landfill

The statute giving county commissioners authority to regulate the "disposal of garbage," G.S. 153-272, does not authorize county

commissioners to grant an exclusive franchise for the operation of a landfill.

3. **Counties § 2— collection of "garbage" — putrescible material commingled with other waste**

The trial court did not err in its conclusion that defendants were engaged in the collection and disposal of "garbage" within the meaning of G.S. 153-272 where it found that putrescible material constitutes 10% of the waste collected by defendants and that such material is inseparable from other solid waste collected and disposed of by defendants.

4. **Counties § 2— franchise to collect "garbage" — separability from invalid provisions**

The trial court did not err in concluding that franchises granted to plaintiffs by a county are severable so that the invalidity of those portions of each purporting to grant an exclusive franchise for the collection and disposal of "trash" and for the operation of landfills does not, *per se*, compel the conclusion that the grant of the exclusive right to collect and dispose of "garbage" is also invalid.

5. **Counties § 2— statute authorizing counties to grant franchises for garbage collection — no unconstitutional grant of legislative authority**

The statute giving the boards of county commissioners authority to grant exclusive franchises to collect and dispose of garbage for compensation, G.S. 153-272, is not an unconstitutional delegation of legislative power but comes within the exception permitting the delegation to municipal corporations and to counties of power to legislate concerning local problems.

APPEAL both by plaintiffs and by defendants from *McKinnon, J.,* at the 11 September 1972 non-jury Session of ROBESON, heard prior to determination by the Court of Appeals.

These two actions for injunctive relief and for damages were, by consent, consolidated for trial in the Superior Court, the material facts being the same in both. By consent, the action in each case against the defendant McBryde was dismissed. The defendant Lafayette Transportation Service, Inc., was not a party to the suit by Porter. The judgment of the Superior Court in the suit by Sanitation Service, Inc., granted no injunctive relief against this defendant and the question of its liability for damages was reserved.

The Superior Court granted injunctive relief in favor of each plaintiff against Suburban Sanitation Service, Inc., hereinafter called Suburban, and in favor of Sanitation Service, Inc., against Logan. It also adjudged that both plaintiffs recover damages of Suburban and that Sanitation Service, Inc., recover damages of Logan, all such damages to be assessed after further hearing.

In each action the plaintiff alleged that on 6 December 1971 Robeson County, pursuant to authority conferred upon it by G.S. 153-272, granted to the plaintiff an exclusive franchise, for a period of five years, "to pick up, collect, transport and dispose of trash, garbage and refuse" in a designated area of the county, the two such franchises, together, covering the entire county outside of the incorporated cities and towns therein. Each plaintiff alleged that the defendants sued by him or it are engaged in the business of picking up, collecting, transporting and disposing of garbage and refuse for a fee within the area described in such plaintiff's franchise and prays that such defendants be permanently enjoined from so doing.

Each such franchise agreement also purported to grant an exclusive right "to operate and maintain landfills and dispose of trash and garbage" in the described area. In each the grantee agreed to "render reasonably acceptable service to persons, firms and corporations located in [the] franchised area and at a reasonable price for services rendered," the price not to be less than that prevailing for like services in adjoining North Carolina counties. Each franchise agreement further provided that nothing therein "shall prevent any person, firm or corporation from personally disposing of its own trash, garbage or refuse * * * in a legal and lawful manner," that the grantee's landfill "shall be open to the general public" upon payment of a reasonable fee and that the grantee agreed to commence service on 1 January 1972 and to serve the entire area within twelve months thereafter. The two franchises are identical except as to territory and except that the one issued to Sanitation Service, Inc., is for the collection and disposal of "trash and garbage," whereas that issued to Porter is for the collection and disposal of "trash, garbage and refuse."

In their answers Suburban and Logan each admits that it or he "has been engaged in the said business of picking up, collecting and transporting, not only garbage and refuse, but also rubbish, trash and other discarded solid materials under the rules and regulations of the North Carolina State Board of Health as they pertain to the disposal of solid waste." Each alleged that the exclusive franchise relied upon by the plaintiff is illegal and void, being both in excess of the authority conferred upon the county by statute and a deprivation of the defendant's contractual and property rights, in violation of provisions of the State and Federal Constitutions.

A jury trial being waived, the matters were heard by the Superior Court. It was stipulated that Suburban, as of the date of the hearing, continued to pick up and dispose of garbage, refuse and trash within the area described in each of the franchise agreements, serving one business customer and 39 residents of the area covered by the Porter franchise and four business customers and 206 residents of the area covered by the franchise issued to Sanitation Service, Inc., and that Logan, likewise, continued to pick up and dispose of garbage, refuse and trash within the area covered by the franchise agreement issued to Sanitation Service, Inc., serving five business customers and 250 residents of that area.

It was further stipulated that Suburban applied to the County Tax Collector for a license, tendering the proper fee therefor, but was refused such license because of the existence of the above mentioned franchises; that both Suburban and Logan sought from the County Commissioners an approval letter, required by the State Board of Health before it will inspect a solid waste disposal facility, which approval letter was refused because of the existence of the said franchises; and that each of these defendants has permission to dispose of its collections of waste materials in the landfill operated by the City of Fayetteville.

For the purpose of its judgment, the Superior Court adopted, as applicable to these actions, the definitions of "garbage," "refuse" and "solid waste" contained in G.S. 130-166.16(1), (2) and (3), respectively. The plaintiffs assign this as error.

The Superior Court's findings of fact material to this appeal are here summarized, except as direct quotation is indicated:

On 6 December 1971 the County Board of Commissioners adopted resolutions set forth in its minutes and thereafter entered into the above mentioned franchise agreement with Sanitation Service, Inc., granting it "an exclusive franchise and right to pick up, collect, transport and dispose of trash and garbage."

Porter is and has been engaged in the business of solid waste disposal. Prior to 21 April 1971, he was granted an exclusive privilege "to collect waste" in the area covered by the franchise agreement here in question.

"4. Pursuant to the actions of the Board of Commissioners on December 6, 1971, the County of Robeson entered into an Exclusive Franchise and Agreement dated December 6, 1971, with James Porter granting to him an 'Exclusive Franchise and Right to pick up, collect, transport and dispose of trash, garbage and refuse outside of the incorporated cities and towns of Robeson County' in a specifically described area which was the same territory for which he had previously been granted an exclusive privilege to collect waste. [To this finding the defendants excepted.]

"5. Suburban Sanitation Service, Inc., is a North Carolina corporation incorporated in April 1971, and Wayne L. Raybon is its president and sole stockholder. Wayne L. Raybon has been engaged in the business of solid waste disposal since 1967, and has continued the same business through Suburban Sanitation Service, Inc., since its incorporation. Suburban Sanitation Service, Inc., as of the date of the hearing was serving approximately 206 residences and 4 businesses in the territory described in the exclusive franchise and agreement to Sanitation Service, Inc., and approximately 39 residences and one business in the territory described in the exclusive franchise and agreement to James Porter. Suburban Sanitation Service, Inc., holds a permit from the Robeson County Health Director and maintains a truck approved by the Robeson County Health Director for the operation of its business.

"6. Cooper Logan is a citizen and resident of Robeson County, doing business as Logan's Disposal Service, and has been for more than two years prior to the date of the hearing engaged in the business of solid waste disposal, and at the date of the hearing was serving approximately 250 residences and 5 businesses in the territory described in the 'Exclusive Franchise and Agreement' to Sanitation Service, Inc. He holds a permit from the Robeson County Health Director and maintains a truck approved by the Robeson County Health Director."

Wayne L. Raybon and the defendant Logan had notice of and participated in a meeting of the County Board of Commissioners on 21 April 1971 at which a public hearing was held on the question of providing garbage and trash service in the county on a franchise basis. Each of them

also had notice of the continuing deliberations of the Board of Commissioners on the subject, and Wayne Raybon attended the meeting of the Board on 6 December 1971.

"10. The defendant, Suburban Sanitation Service, Inc., and the defendant, Cooper Logan, are engaged in essentially the same type of operation, each serving primarily residences outside of the municipalities in Robeson County and picking up on a regular schedule all household solid waste that may be put out for collection by their customers. Such solid wastes include, among other things, paper, bottles, cans, tree limbs, food scraps, rotten fruit, and food wrappers, and are the types of solid wastes normally found at residences. Each defendant estimates that the vegetable and animal food scraps and matter approximates 10% or less of the material collected. Such putrescible material is inseparable from the other solid waste put out for collection, and it is collected and disposed of by these defendants by transportation in their respective trucks to the landfill of the City of Fayetteville.

"11. That because of its inseparable nature and because it contains putrescible material, including animal and vegetable food scraps, containers and wrappers which have contained food and other putrescible material and which have not been cleaned, and milk cartons and soft drink cans, the solid waste collected by these defendants constitutes 'garbage' as defined in this Judgment and within the meaning of G.S. 153-272. [To this finding the defendants excepted.]

"12. Suburban Sanitation Service, Inc., is engaging in the business of picking up, collecting, transporting and disposing of garbage within the territory described in the Exclusive Franchise and Agreement of Sanitation Service, Inc., and within the territory described in the Exclusive Franchise and Agreement to James Porter, and its continued operation results in damage to each of the plaintiffs. [To this finding the defendants excepted.]

"13. Cooper Logan, doing business as Logan's Disposal Service, is engaging in the business of picking up, collecting, transporting and disposing of garbage within the territory described in the Exclusive Franchise and Agreement to Sanitation Service, Inc., and his continued

operation results in damage to Sanitation Service, Inc. There has been no evidence that Logan has engaged in this business in this territory franchised to James Porter, and he was not sued by Porter. [To this finding the defendants excepted.]"

Upon the foregoing stipulations and findings of fact, the Superior Court reached the following conclusions of law:

### Conclusions of Law

"1. That G.S. 153-272 is a valid enactment of authority to County Commissioners to regulate the collection and disposal of garbage, and that the statute is not unconstitutional on any ground alleged by the defendants. [To this conclusion the defendants excepted.]

"2. The Court is of the opinion that G.S. 153-272 validly authorizes the Robeson County Board of Commissioners to regulate the collection of and disposal of garbage in the interest of public health, and that the inclusion of garbage or putrescible material in waste collected and disposed of creates a valid danger to the public health which is a proper subject of regulation. [To this conclusion the defendants excepted.]

"3. That the actions of the Robeson County Board of Commissioners in granting exclusive franchises for the collection and disposal of garbage, after notice and hearing as described in the minutes of the Board of Commissioners, was a valid exercise by the Robeson County Board of Commissioners of the authority granted to it by statute. [To this conclusion the defendants excepted.]

"4. The Court is of the opinion that insofar as the resolutions of the Robeson County Board of Commissioners and the exclusive franchises and agreements to Sanitation Service, Inc., and to James Porter, purport to grant an exclusive franchise and right to pick up, collect, transport and dispose of trash, the Court finds the term 'trash' to be synonymous with 'refuse' or nonputrescible wastes, and the court finds this to be beyond the authority granted by G.S. 153-272 and ultra vires, and the court is of the opinion that the purported inclusion of the term 'trash' is surplusage insofar as the grant of an exclusive franchise is concerned and does not invalidate the valid grant of such

franchises as to garbage. [To this conclusion both plaintiffs and defendants excepted.]

"5. The Court is of the opinion that insofar as the exclusive franchise and agreements might be interpreted as an exclusive franchise to maintain landfills that this is beyond the authority granted by G.S. 153-272 and beyond the authority of the resolutions adopted by the Board of Commissioners of Robeson County on December 6, 1971, but this does not invalidate the valid portions of the exclusive franchises and agreements. [To this conclusion both plaintiffs and defendants excepted.]

"6. The Court is of the opinion that the enactment of Article 13B of Chapter 130 of the General Statutes in 1969 did not affect the authority of the Board of Commissioners to act under G.S. 153-272, but that the operations of persons engaged in the business of solid waste disposal are subject to the valid regulations made pursuant to that article. [To this conclusion the defendants excepted.]

"7. That the operations of the defendants, Suburban Sanitation Service, Inc., and Cooper Logan, doing business as Logan Disposal Service, in the collection of solid waste material which includes garbage, is in violation of the Exclusive Franchises and Agreements as validly granted to the plaintiffs by the Robeson County Board of Commissioners and is causing the respective plaintiffs irreparable harm for which no adequate remedy at law exists, and the respective plaintiffs are entitled to injunctive relief. [To this conclusion the defendants excepted.]

"8. For the purposes of interpreting this Judgment and the injunctive relief herein granted, the Court is of the opinion that the collection and disposal of residential, commercial and industrial solid wastes which do not include garbage, or putrescible material, is not in violation of the Exclusive Franchises and Agreements validly granted to the respective plaintiffs. [To this conclusion both plaintiffs and defendants excepted.]

"9. The defendants have offered no evidence of the unreasonableness of fees charged by Sanitation Service, Inc., or James Porter, and the Court is of the opinion that the defendants have no standing to complain about the

portions of the Exclusive Franchises and Agreements which state that under no circumstances shall the prices charged be less than the prevailing prices for like services rendered in adjoining counties in the state, and the Court makes no determination as to the validity of that provision of the franchises and agreements. [To this conclusion the defendants excepted.]"

The court thereupon adjudged that Suburban be enjoined from "picking up, collecting, transporting and disposing of solid waste material which includes garbage" within the area covered by the franchise of Sanitation Service, Inc., and within the area covered by the franchise of Porter so long as those franchise agreements remain in force and effect, and that the defendant Logan be enjoined from "picking up, collecting, transporting and disposing of solid waste material which includes garbage" in the area covered by the franchise of Sanitation Service, Inc., so long as it remains in force and effect, and that Sanitation Service, Inc., recover damages of each defendant and Porter recover damages of Suburban, all such damages to be assessed after further hearing by the court upon motion of any party concerned.

*Boyce, Mitchell, Burns & Smith by Eugene Boyce for Sanitation Service, Inc.*

*Ellis Page for Robeson County.*

*W. Earl Britt for James Porter.*

*Nye & Mitchell by Charles B. Nye and John E. Bugg; and L. J. Britt & Son by Luther J. Britt, Jr., for defendants.*

LAKE, Justice.

### THE PLAINTIFFS' APPEALS

The plaintiffs contend that authority to issue exclusive franchises to pick up, collect, transport and dispose of trash and other refuse, as well as garbage, was conferred upon the Board by G.S. 153-272. The Superior Court concluded: (a) This statute authorizes the Board to grant an exclusive franchise for the collection and disposal of "garbage"; (b) this statute does not authorize the Board to grant an exclusive franchise for the collection and disposal of "trash"; (c) solid waste material in which "garbage" is inseparably commingled is "garbage";

and (d) this statute does not authorize the Board to grant an exclusive franchise to maintain a landfill. The appeal of the plaintiffs relates to (b) and (d) of these conclusions.

[1] For the reasons set forth in our opinion in *Transportation Service v. County of Robeson,* 283 N.C. 494, 196 S.E. 2d 770, we find no error in the adoption by the Superior Court, for the purposes of these cases, of the definitions of "garbage," "refuse" and "solid waste" contained in G.S. 130-166.16, or in its conclusion that G.S. 153-272 does not authorize the Board of County Commissioners to grant an exclusive franchise for the collection and disposal of "trash," so defined and not substantially and inseparably commingled with "garbage," so defined.

[2] The authority conferred by G.S. 153-272 upon the Board of County Commissioners to regulate the "disposal of garbage" would, of necessity, extend to the disposal of garbage by the operation of a landfill. However, since a landfill is also a method for disposal of wastes which are not "garbage," within the above definition and so within the meaning of G.S. 153-272, there was no error in the conclusion of the Superior Court that this statute does not authorize the Board of County Commissioners to grant an exclusive franchise for the operation of a landfill.

We find, therefore, no merit in the plaintiffs' assignments of error and, with reference to the plaintiffs' appeals, the judgment of the Superior Court is affirmed.

### THE DEFENDANTS' APPEALS

[3] The Superior Court found as a fact that the waste picked up by each defendant, pursuant to its regular schedule of service to its customers, includes "paper, bottles, cans, tree limbs, food scraps, rotten fruit, and food wrappers," that each defendant estimates that the vegetable and animal food scraps and matter approximates 10% or less of the material collected and "such putrescible material is inseparable from the other solid waste" collected and disposed of by these defendants. To this finding there was no exception. It is followed in the judgment of the court by a paragraph designated "Finding of Fact No. 11," to which the defendants did except. In it the court "found" that because of the inseparability of the entire mass of waste collected by each defendant into its putrescible and nonputrescible components, the entire collection constitutes "gar-

bage," within the meaning of G.S. 153-272. This paragraph is, in reality, a conclusion of law. It is supported by the above mentioned finding of fact to which no exception was taken.

Obviously, a scrap of bread, a chicken bone, a watermelon rind or a half-filled carton of soured milk thrown into a truckload of yard trash and discarded newspapers would not convert the entire mass into "garbage." Where, however, there is a substantial commingling of "garbage" and "trash" into an inseparable mass, the whole becomes "garbage," attractive to rats and dangerous to the public health. The drawing of the line between trivial and substantial commingling of the two types of material is a question for the exercise of sound judgment in each case, but we are not prepared to say that a "garbage" component amounting to 10% of the total mass is not sufficient to warrant the conclusion that the entire mixture is "garbage," within the meaning of the statute. Thus, we find no error in the conclusion of the Superior Court that each defendant is presently engaged in the collection and disposal of "garbage," and the defendants' Assignment of Error No. 1 is overruled.

[4] We also find no merit in the defendants' Assignments of Error 2 and 3 relating to the conclusion of the Superior Court that the franchises granted by the county to the plaintiffs are severable, so that the invalidity of those portions of each purporting to grant an exclusive franchise for the collection and disposal of "trash" and for the operation of landfills does not, per se, compel the conclusion that the grant of the exclusive right to collect and dispose of "garbage" is also invalid.

[5] We are thus brought to the defendants' fourth assignment of error. This is directed to the Superior Court's conclusion that G.S. 153-272 is a valid enactment of authority to county commissioners to regulate the collection and disposal of garbage and is not unconstitutional "on any ground alleged by the defendants." The defendants' assignment of error asserts that this conclusion is erroneous "because General Statute 153-272 is an illegal and unconstitutional delegation of power to the county commissioners by our legislators * * * ." The only argument made in support of this assignment of error in the brief of the defendants is that G.S. 153-272 "does not lay down or point to any standards for the guidance of counties in the exercise of their discretion in granting exclusive franchises for the

removal and disposal of garbage within said county," and for that reason is a violation of Article II, § 1, of the Constitution of North Carolina.

The general rule that legislative power, vested in the General Assembly by Article II, § 1, of the Constitution of North Carolina, may not be delegated is subject to an exception permitting the delegation to municipal corporations and to counties of power to legislate concerning local problems. *Jackson v. Board of Adjustment,* 275 N.C. 155, 162, 166 S.E. 2d 78; *Efird v. Comrs. of Forsyth,* 219 N.C. 96, 12 S.E. 2d 889; *Tyrrell County v. Holloway,* 182 N.C. 64, 108 S.E. 337. There is no merit in this assignment of error.

One who seeks a judicial determination that a statute, or governmental action pursuant thereto, is unconstitutional must raise the question at the earliest possible stage of the proceeding, usually in his pleadings in the trial court, must point out the specific constitutional provision upon which he relies and must preserve the question for consideration by the appellate court through an assignment of error specifically directing attention to such constitutional provision and by argument in his brief directed thereto. *Martin v. Housing Corporation,* 277 N.C. 29, 41, 175 S.E. 2d 665; *Rice v. Rigsby* and *Davis v. Rigsby,* 259 N.C. 506, 131 S.E. 2d 469. As Justice Parker, later Chief Justice, said in the case last cited, "Constitutional questions are of great importance and should not be presented in uncertain form." In *United States v. Spector,* 343 U.S. 169, 72 S.Ct. 591, 96 L.Ed. 863, the Supreme Court of the United States said, "But when a single, naked question of constitutionality is presented, we do not search for new and different constitutional questions."

The franchise granted to each plaintiff provides: (1) The grantee will obtain and maintain its equipment and other facilities in conformity to the requirements of the State Board of Health and to applicable laws of the State; (2) it will render "reasonably acceptable service" to persons, firms and corporations in its area, the County Board of Commissioners reserving the right to determine any controversy arising as to "reasonable acceptable service"; (3) the grantee will furnish such service at a "reasonable price," the County Commissioners reserving the right to determine any controversy which may arise as to such price, but in no event shall the price be *less* than the prevailing price for like services rendered in adjoining counties of this State; (4) the grantee will furnish its own landfill; and (5)

such landfill may be used by "the general public" upon payment of a "reasonable fee" for such use.

Each franchise provides that nothing therein shall be construed to prevent any person, firm or corporation from "personally disposing of its own * * * garbage * * * in a legal and lawful manner and in compliance with the laws, rules and regulations of the North Carolina Health Department." The provision as to the use of the grantee's landfill by the general public would seem to mean that the above mentioned right of any person, firm or corporation "personally" to dispose of his or its own garbage would include transporting it to such landfill.

It will be observed the franchise agreement: (1) Does not expressly forbid discrimination either in service or in price; (2) provides no minimum frequency of pick up of garbage; (3) provides no maximum price or standard for determining a "reasonable price"; (4) apparently leaves both service and price to individual negotiation, subject to complaint to the Board of Commissioners; (5) does not require the grantee to remove garbage from the premises of any person, firm or corporation with whom it has no contract or with whom any controversy arises pending the determination of such controversy by the Board of Commissioners; and (6) does not require the grantee to pick up garbage heretofore or hereafter thrown or deposited on or near the roadside or any other public place.

These and other circumstances appearing in the record seem to distinguish the present case from many of the decisions of other courts cited by text writers in support of general statements that the grant by a city of an exclusive contract for the removal of garbage constitutes a proper exercise of the police power. See McQuillin, The Law of Municipal Corporations, 3rd Ed., § 24.251; 56 AM. JUR. 2d, Municipal Corporations, § 462; Annot., 83 A.L.R. 2d 799. Numerous cases from other jurisdictions, cited by these writers, support the proposition that a city, in the exercise of the police power delegated to it by the State, may prohibit anyone other than the city itself, or an independent contractor with whom it contracts for the removal of garbage, to transport garbage over its streets. This is deemed a reasonable exercise of the police power for the protection of the public health. Many decisions cited by these writers hold, and we think it cannot be doubted, that the police power extends to reasonable regulations of the equipment used, the manner

of collecting and transporting, the method and place of disposition of garbage by a scavenger and the requirement that he obtain a license. This, obviously, is a different question from that presented by the grant of an exclusive franchise.

The most widely accepted, and we think the most plausible, basis for the decisions sustaining the validity of ordinances prohibiting anyone other than the city itself, or its independent contractor, from transporting garbage is that the public health can best be protected if the city authorities have but one scavenger to supervise. See: *City of Indianapolis v. Ryan,* 212 Ind. 447, 7 N.E. 2d 974; *O'Neal v. Harrison,* 96 Kansas 339, 150 P. 551; *Wheeler v. Boston,* 233 Mass. 275, 123 N.E. 684; *Board of Health of Grand Rapids v. Vink,* 184 Mich. 688, 151 N.W. 672; *Valley Spring Hog Ranch Co. v. Plagmann,* 282 Mo. 1, 220 S.W. 1; *Smiley v. MacDonald,* 42 Neb. 5, 60 N.W. 355; *Atlantic City v. Abbott,* 73 N.J.L. 281, 62 A. 999; *Spencer v. Medford,* 129 Ore. 333, 276 P. 1114; *Smith v. City of Spokane,* 55 Wash. 219, 104 P. 249. It may be seriously questioned whether this reason applies to the grant of an exclusive franchise to collect and dispose of garbage *for compensation,* leaving, as does the franchise in the present case, every person, firm or corporation free "personally" to transport and dispose of his or its own garbage. G.S. 153-272 expressly authorizes the issuance of such a franchise.

The myriad cases cited by the above mentioned text writers disclose that in many areas, especially large cities, the right to collect garbage for use as hog feed or other commercial purposes is much sought after and not without substantial value. See: *Jansen Farms v. City of Indianapolis,* 202 Ind. 138, 171 N.E. 199; *Wheeler v. Boston, supra; People v. Gardner,* 136 Mich. 693, 100 N.W. 126, aff'd, 199 U.S. 325, 26 S.Ct. 106, 50 L.Ed. 212; *Atlantic City v. Abbott, supra; State ex rel. Moock v. City of Cincinnati,* 120 Ohio State 500, 166 S.E. 583; *Cornelius v. Seattle,* 123 Wash. 550, 213 P. 17. We are not concerned here with a business of minimal importance, either in value or in relation to the public health. Whether a person who contracts with a restaurant operator, householder, or industrial plant to purchase garbage produced on the premises of such vendor is to be deemed a person transporting and disposing of his or its "own" garbage, within the meaning of the franchise in the record before us, presents another interesting question, not now before us for decision.

The police power is not unlimited. To survive a well aimed constitutional attack, the governmental activity must have not only a good purpose but also a reasonable relation to the promotion of the public health, safety, morals or welfare. See, in relation to the regulation of garbage collection and disposal: *Wheeler v. Boston, supra; Valley Spring Hog Ranch Co. v. Plagmann, supra; In re VanDine,* 23 Mass. 187; *State v. Fisher,* 2 Mo. 174; *Coombs v. MacDonald,* 43 Neb. 632, 62 N.W. 41; *Atlantic City v. Abbott, supra.* As we have noted, the franchises before us permit any corporation "personally" to transport and dispose of its own garbage. The only way that a corporation can "personally" do so is through its employees. The relation to the promotion or preservation of the public health of a distinction between transporting and disposing of corporate garbage by employees and by an independent contractor is not too clear for question.

On 6 December 1971, each of the defendants, pursuant to contracts with his or its customers, was engaged in a lawful business, which business was conducive to the maintenance of the public health, sanitation and welfare. Nothing in the record suggests that either of the defendants did not have the proper equipment or was not qualified to operate such business in a safe and lawful manner, that any customer was dissatisfied with his or its services or that the manner in which the business was operated endangered the public health, safety or welfare. On that date the Board of County Commissioners by official action, procedurally correct, undertook to deprive each of these defendants of his or its right to continue so to serve his or its customers and to confer that right upon another by granting to such favored person an exclusive franchise to carry on such business. This is drastic governmental action which can be supported only by reasonable basis for the belief that there is a substantial public need therefor.

Counsel have not cited and our research has not disclosed any decision of this Court determining the validity of such governmental action. The nearest approach thereto in our reports appears to be *State v. Hill,* 126 N.C. 1139, 36 S.E. 326. That case, however, is not squarely in point. G.S. 153-272 purports to confer upon the Board of County Commissioners authority to grant licensed persons the exclusive right to collect and dispose of garbage *for compensation.* The reasonableness of the distinction made in these franchises between transpor-

tation and disposition of garbage by the producer thereof "personally" in the transportation and disposition of identical garbage under identical circumstances by an independent contractor other than the grantee of the franchise is not before us in this appeal. It is not shown by this record to have been before the Superior Court. In affirming the judgment of the Superior Court, we do not determine this question. It may or may not be presented to the Superior Court in the further hearings provided for in its judgment on the question of the recovery of damages by the plaintiffs from these defendants.

Affirmed.