THE STATE OF MISSOURI at the Relation of ROY W. RUCKER, Prosecuting Attorney of Chariton County, Missouri, Respondent, v. CHRIS FEITZ, Appellant.

Kansas City Court of Appeals, November 3, 1913.

1. **INJUNCTION, MANDATORY: Equity: Obstructions In Public Highway.** The defendant was indicted and convicted for obstructing a public road. He paid the penalty imposed but did not remove the obstruction and this action was instituted by the prosecuting attorney to enforce its removal. The defendant, the owner of a farm, erected a fence eight or ten feet outside

of his property line and on the adjacent public highway. *Held*, that the power and jurisdiction of a court of equity to give speedy and complete relief to the public in such case cannot be successfully questioned.

2. ————: ————: **Public Nuisance.** A prosecuting attorney is authorized by law to prosecute an action in equity in behalf of the State to enjoin a public nuisance, notwithstanding the existence of other civil and criminal remedies.

3. ————: ————: **Criminal Laws.** A court of equity will not undertake to enforce the criminal laws; therefore it will not enjoin the commission of a threatened act merely because the act would be a crime, but, on the other hand, neither will it withhold its equitable relief in a case in which for other reasons it has jurisdiction, merely because the act when committed would be a crime.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb*, Judge.

Affirmed.

*S. A. Davis, Jones & Conkling* for appellant.

*Roy W. Rucker* for respondent.

JOHNSON, J.—In 1906, defendant became the owner of a farm on the south side of a public road in Chariton county which had been recognized and used as a public highway for more than sixty years. Originally the road was bounded by rail fences and practically was level, but after years of use by the public the traveled surface, which was near the middle of the right of way, wore off and was washed down, leaving embankments on each side which were not ordinarily used by travelers. In time the rail fences decayed and disappeared, leaving the boundaries of the highway to be defined by hedge fences which the landowners had planted on each side just inside the rail fences. Shortly after he purchased the land defendant built a post and wire fence eight or ten feet north of his hedge fence to mark the north boundary of his

farm, thereby encroaching by that space upon the public highway. He was indicted and convicted in the circuit court of Chariton county, on a charge of obstructing a public road and appealed to this court. We affirmed the judgment (State v. Feitz, 154 Mo. App. 578), and in the opinion said:

"There was abundant evidence to show that the public recognized the whole lane, or space between the hedge fences, as the public road, and that it was frequently worked by the public, and that frequently when the main traveled space was very muddy, the side or top of the embankment (or ridge, as called by some of the witnesses) next to defendant's hedge would be used. Considering the whole evidence, it seems to us that the finding of the jury could scarcely have been otherwise than for the State. And if that, in defendant's behalf, were alone considered, it would have sustained a verdict of guilty. Judging by the examination of witnesses and parts of suggestions made in defendant's behalf, he seems to think the State should have been required to prove the whole road space was traveled and worked. That is a condition rarely existing with the country roads. Again, much is said of the 'ridge' lying above the actual traveled space, but that is also a common condition. Much was said in printed and oral argument about whether the road had been dedicated or whether it had become a road by limitation. It is enough to say of this that it is quite certain that it was one or the other, and as either will suffice it is unimportant which it was. We do not agree that there was no evidence of dedication. In the circumstances shown in evidence it may very reasonably be inferred that a dedication was made."

Defendant paid the fine and costs assessed against him but failed and refused to remove the fence which still remains where he placed it. The prosecuting attorney of Chariton county instituted the present pro-

ceeding which is an action in equity to obtain a mandatory injunction to compel the removal of the fence on the theory that its maintenance as an obstruction in the highway is a continuing public nuisance. On the final hearing the court decided the issues in favor of plaintiff and rendered judgment in accordance with the prayer of the petition. Defendant appealed. The court made findings of fact in the judgment rendered from which we quote as follows: "That said post and wire fence so erected and maintained as aforesaid by the defendant constitute an obstruction to said public road and highway resulting in a great inconvenience and damage to a large number of the citizens of the State of Missouri, and especially of the citizens of Chariton county, Missouri, who travel along said public road and highway, and that said post and wire fence so erected and maintained by the defendant here, constitutes and is a continuing public nuisance. The court further finds from the evidence that the defendant herein has been prosecuted and convicted in the circuit court of Chariton county, Missouri, under the criminal statutes of the State of Missouri for erecting and maintaining the obstruction herein complained of to the public road and highway hereinbefore described, but that nothwithstanding said prosecution and conviction the defendant has failed and refused and still fails and refuses to remove said obstruction from said public road and highway. The court further finds from the evidence that by reason and in consequence of the said obstruction and nuisance hereinbefore described, so erected and maintained by the defendant the citizens of the State of Missouri and especially of the county of Chariton, who travel along the said public road and highway have sustained and are sustaining great loss and damage and inconvenience, for which they cannot be compensated by suit at law, and for which injury,

loss, damage and inconvenience so sustained by them, they have no adequate and complete remedy at law.''

There can be no reasonable question of the soundness of our decision of the criminal case that the public highway consisted of the entire strip of land lying between the hedge fences and that the erection and maintenance of the post and wire fence upon that strip constituted an unlawful obstruction of the highway and an interference with the rights of the public. It is a public nuisance, a purpresture that should be abated and the only question we shall discuss and determine is whether or not the aid of equity may properly be invoked for its suppression.

Counsel for defendant rely on the rule that injunction will not lie where an adequate remedy at law exists (High on Injunctions, 745, 761, 829, 830; McWilliams v. Burnes, 115 Mo. App. 12) and insist that a complete and adequate remedy at law does exist for the removal of the obstruction (citing Revised Statutes 1909, sections 10478, 10533 and 11764; High on Injunctions, sec. 823; Kurz v. Turley, 54 Mo. App. 237; State ex rel. v. Buhler, 90 Mo. 568.) Further counsel argue that ''courts of equity will not lend their aid in the enforcement of the criminal laws or in restraining acts which are criminal in their nature (citing High on Injunctions, sections 20 and 68; Railway v. Kansas City, 29 Mo. App. 96; State ex rel. v. Schweickardt, 109 Mo. 496).

These are well-recognized and frequently applied rules and it must be conceded that the statutes of this State cited by defendant provide means for the removal of obstructions in public highways and for the punishment of those who willfully or knowingly set up such obstructions. But the existence of these remedies is not exclusive for the reason that they cannot be held to be complete and adequate in all cases. The facts of the present case pointedly exemplify the in-

adequacy of the legal remedies. For a number of years the defendant has maintained a purpresture upon public rights and property in contempt and defiance of the law and of the efforts of its officers to enforce it. A successful criminal prosecution has proved insufficient to overcome his determination and ability to persist in wrongdoing. The power and jurisdiction of a court of equity to give speedy and complete relief to the public in such case cannot be successfully questioned and has been expressly sanctioned in recent decisions of the Supreme Court and of this court. [State ex rel. v. Canty, 207 Mo. 439; State ex rel. v. Lamb, 237 Mo. 437; State v. Franklin, 133 Mo. App. 486; Heitz v. City of St. Louis, 110 Mo. l. c. 626.]

In the case first cited the Supreme Court speaking through Woodson, J., say: "But the power and jurisdiction of a court of equity to enjoin the maintenance of a public nuisance is of a very ancient origin and is a well-established doctrine.

"Judge Story, in treating this question, said: 'In regard to public nuisances, the jurisdiction of courts of equity seems to be of a very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth. The jurisdiction is applicable not only to public nuisances, strictly so-called, but also to purprestures upon public rights or property.' [2 Story's Equity Jurisprudence (13 Ed.), sec. 921.] And in section 923 the same author says: 'In cases of public nuisances, properly so-called, an indictment lies to abate them and to punish the offenders. But an information also lies in equity to redress the grievance by way of injunction.' And he further says in section 924: 'The ground of this jurisdiction of courts of equity in case of purpresture as well as of public nuisances undoubtedly is their ability to give more complete and perfect remedy than is attainable at law, in order to prevent irreparable mischief, and also to suppress oppressive

and vexatious litigation. In the first place, they can interpose where courts of law cannot, to restrain and prevent such nuisances as are threatened or are in progress, as well as to abate those already existing. In the next place, by a perpetual injunction the remedy is made complete through all future time; whereas an information or indictment at the common law can only dispose of the present nuisance, and for future acts new precautions must be brought."

And in State ex rel. v. Lamb, supra, the same court expressly hold that. a prosecuting attorney is authorized by law to prosecute an action in equity in behalf of the State to enjoin a public nuisance, notwithstanding the existence of other civil and criminal remedies. "A court of equity (say the court) will not undertake · to enforce the criminal law; therefore, it will not enjoin the commission of a threatened act merely because the act would be a crime, but, on the other hand, neither will it withhold its equitable relief in a case in which, for other reasons, it has jurisdiction, merely because the act when committed would be a crime."

No error was committed by the learned trial judge in making the injunction perpetual. The judgment is affirmed. All concur.