Jones, J.
 

 The chief question for our determination is whether the ordinance of the city of Cincinnati, as applied to the relator, impinges upon his constitutional rights guaranteed to him by the state and federal Constitutions.
 

 In the case of
 
 Yutze
 
 v.
 
 Copelan, Chief of Police,
 
 109 Ohio St., 171, 142 N. E., 33, 32 A. L. R., 1048, the same constitutional questions were fully presented, but were not then decided by this court. It is again urged that the city ordinance contravenes Sections 1 and 2 of Article I of the state Constitution, in that it denies the right of individual contract and confers special privileges upon the contractor with the city, thereby creating a monopoly in respect to the garbage contract; that it violates Section 19 of the same Article, in that it permits property to be taken without compensation, and that, contrary to the provisions of the Fourteenth Amendment to the federal Constitution, the relator is denied the equal protection of the laws. The ordinance under attack is as follows, Section 973 (passed April 20,1915): “That no person shall remove or carry in or through any of the streets, squares, courts, lanes, avenues, places or alleys of the City of Cincinnati, any house dirt or house offal, animal or vegetable, or any refuse substance, from any of the dwelling houses or other
 
 *505
 
 places of the city, or carcass of any dead animal, unless the owner of the same shall have procured a permit so to do from the Director of Public Service, prescribing the terms and conditions as may be deemed essential to the health and interests of the city. Provided, however, the provisions hereof shall not apply to any contractor with the city in relation to garbage,” etc. The city manager now possesses the functions formerly exercised thereunder by the director of public service.
 

 Public health and sanitation, and this includes the process of collection and disposal of garbage, have always been recognized by the courts of this country as coming within the proper exercise of the police power of the state, and within the police powers of the city, if such are conferred upon the municipality by the state. In that field of legislation private property and private convenience must give way to the public welfare. Ample power to enact regulations conserving the public health and providing for the collection and disposition of garbage has been conferred upon municipalities by Sections 3646 and 3649, General Code. If the city is a chartered, home-rule city, it also has power to adopt and enforce sanitary regulations not in conflict with the general law, under our Constitution as amended in 1912. The action of the city manager in refusing the relator a permit is challenged, because his refusal was arbitrary and based upon mere whim and caprice; that the city, having prescribed no conditions upon which permits should be granted, left their determination to the city manager, and thereby invested him with legislative power. It is obvious that the city cannot, by ordinance, prescribe all the terms and conditions
 
 *506
 
 under which a permit shall be granted for the collection and removal of garbage. The fact that the ordinance did not prescribe the conditions and terms under which a permit should be granted, but left their determination to the city manager, did not confer legislative power upon him in a constitutional sense.
 
 Yee Bow
 
 v.
 
 City of Cleveland,
 
 99 Ohio St., 269, 124 N. E., 132, 12 A. L. R., 1424. Were we to construe the ordinance as one conferring upon the city manager the power to issue general permits for the removal of garbage, and to determine conditions for their issuance, we glean from his testimony, what the court could take notice of judicially, that the supervision of the sanitation of the city, including the removal of garbage, could be more effectively and satisfactorily exercised where the handling of the garbage was in the hands of a single rather than of several garbage collectors. In
 
 City of Rochester
 
 v.
 
 Gutberlett,
 
 211 N. Y., 309, 105 N. E., 548, L. R. A., 1915D, 209, Ann. Cas., 1915C, 483, in dealing with this feature, Chase, J., said: “Experience has shown that when there are many collectors of garbage within a municipality, acting independently although under license, it is difficult to maintain the supervision necessary to preserve the public health; while, with one contractor acting under a contract pursuant to which he is paid and for the faithful performance of which he is required to give bond with sureties, the public health can be and is better and more surely protected.” In addition to this, the city, after advertising for bids and entering into a contract with a single contractor for the collection and removal of garbage, had indicated that this branch of sanitation, affecting the public health of the city, should be undertaken by the
 
 *507
 
 city contractor under the specifications prescribed by the contract, and in view of that fact, also, we are constrained to the view that there was no arbitrary exercise of discretion committed by the city manager, if indeed he had any power to grant a general permit to another than the city contractor.
 

 It is claimed, however, that, because of the fact that the vegetable and animal products commonly called garbage had a monetary value as food for animals, the denial of the privilege to the hotels and restaurants of selling, and to the relator of purchasing, garbage for animal food, was violative of the latter’s constitutional right of contract with relation to private property, and amounted to a special privilege and the creation of a monopoly in favor of the city’s public contractor; that thereby the relator was denied the equal protection of our laws guaranteed him by the Fourteenth Amendment to the federal Constitution. Indeed this is the chief attack upon the validity of the ordinance and its operative effect upon the constitutional rights claimed by the relator. In support of this claimed invalidity of the Cincinnati ordinance, counsel for the relator cite several lower court decisions of this state, and also the case of
 
 Iler
 
 v.
 
 Ross,
 
 64 Neb., 710, 90 N. W., 869, 57 L. R. A., 895, 97 Am. St. Rep., 676. The Nebraska court, while holding that the particular ordinance there under consideration was in excess of the power conferred by a city charter, conceded the city’s power of regulating garbage disposal, its right to contract with a single agency, and its right to give the latter the exclusive privilege of collecting and removing garbage. Under that phase of the case we do not enter upon a virgin field, since the
 
 *508
 
 overwhelming weight of authority, both state and federal, upholds the municipal right to regulate, supervise,-and control sanitation, including the collection and disposal of garbage, under the police power of the city and state; and this may be done, notwithstanding the fact that garbage may have animal food value and the authority for such collection and disposal has been exclusively confided to a single person or agency. We cite a few cases where this principle has been authoritatively decided in other jurisdictions. That the action of the city council in this field of regulation does not contravene the federal Constitution by denying the equal protection of the law, or by taking private property without compensation, or in granting exclusive rights to a single individual for the collection and disposal of garbage, has been definitely decided by the United States Supreme Court in the following cases:
 
 California Reduction Co.
 
 v.
 
 Sanitary Reduction Works,
 
 199 U. S., 306, 26 S. Ct., 100, 50 L. Ed., 204;
 
 Gardner
 
 v.
 
 Michigan,
 
 199 U. S., 325, 26 S. Ct., 106, 50 L. Ed., 212. In
 
 California Reduction Co.
 
 v.
 
 Sanitary Reduction Works,
 
 dealing with constitutional questions, very similar to those here presented, the federal court held: “An ordinance of competent municipal authorities based upon reasonable grounds for the cremation of garbage and refuse at a designated place as a means for the protection of the public health is not a taking of private property for public use without compensation within the meaning of the Federal Constitution even though such garbage and refuse may have some elements of value for certain purposes. The exclusive privilege granted to one company by the Board of Supervisors of San Fran
 
 *509
 
 cisco to dispose of the garbage in the city and county of San Francisco
 
 held
 
 not to be void as taking the property of householders for public use without compensation.” In
 
 Gardner
 
 v.
 
 Michigan, supra,
 
 the United State Supreme Court adhered to and further amplified the principle announced in the
 
 California Reduction case, supra.
 

 The constitutional validity of similar ordinances has likewise been sustained by the following courts:
 
 Wheeler
 
 v.
 
 City of Boston,
 
 233 Mass., 275, 123 N. E., 684, 15 A. L. R., 275;
 
 City of Rochester
 
 v.
 
 Gutberlett, supra; Pantlind
 
 v.
 
 City of Grand Rapids,
 
 210 Mich., 18, 177 N. W., 302, 15 A. L. R., 280;
 
 Valley Spring Hog Ranch Co.
 
 v.
 
 Plagmann,
 
 282 Mo., 1, 220 S. W., 1, 15 A. L. R., 266;
 
 Walker
 
 v.
 
 Jameson,
 
 140 Ind., 591, 37 N. E., 402, 39, N. E., 869, 28 L. R. A., 679, 683, 49 Am. St. Rep., 222, and in the many citations contained therein. These cases are also authority for the principle that granting the power of garbage removal to a single contractor, and excluding others, does not make an ordinance constitutionally invalid on the ground that it effects discrimination or confers special privileges.
 

 We are therefore of the opinion that no rights of the relator, either under the state or federal Constitutions, were violated by reason of the adoption of the city ordinance and the refusal of the city manager to issue him a permit thereunder. Apparently, to safeguard his position in respect to procedure, the relator brought his suit in injunction as well. Although it appears from the journal entry in the trial court that the issues were found generally in favor of the defendants, counsel state that, in fact, the judgment against the relator was rendered in that
 
 *510
 
 court for the reason that injunction did not lie. We need not decide this procedural question in the injunction case, since the disposition of the mandamus case upon its merits necessarily disposes of the other.
 

 In each case the judgment of the Court of Appeals is affirmed.
 

 Judgments affirmed.
 

 Kinkade, Matthias, Day and Allen, JJ., concur.