JANSEN FARMS, INCORPORATED, *v.* CITY OF INDIANAPOLIS (SANITARY DISTRICT).*

[No. 25,094. Filed April 22, 1930. Rehearing denied July 3, 1930.]

---

*Reported and annotated 72 A. L. R. 514.

*Emsley W. Johnson, Byron K. Elliott* and *Chester L. Zechiel,* for appellant.

*Baker & Daniels* and *Warrack Wallace,* for appellee.

MARTIN, J.—Appellee brought this action to permanently enjoin and prohibit appellant from collecting, removing, hauling away and disposing of any "garbage, that is to say kitchen refuse from cooking food" found within the sanitary district of Indianapolis, which acts are alleged to be in violation of §2, ch. 139, Acts 1923, §10608 Burns 1926. Appellant filed a cross-complaint seeking an injunction to prevent appellee from interfering with appellant "in the collection of food products . . . left from the tables" purchased under contract from certain restaurants. Demurrers were filed to both the complaint and cross-complaint, but were withdrawn, and answers in general denial were filed. Judgment was rendered against appellant on both the complaint and cross-complaint, and it was enjoined from collecting, removing, etc., "any garbage" found within the said sanitary district.

The error relied upon is the overruling of appellant's motion for a new trial, wherein it is alleged that the decision of the court is not sustained by sufficient evidence and is contrary to law. The evidence consists of an agreed stipulation of facts, a brief resume of which follows: (1) The department of public sanitation of the city of Indianapolis, (§§1-28, ch. 157, Acts 1917, §§10577-10602 Burns 1926; §§1-5, ch. 139, Acts 1923, §§10607-10610 Burns 1926), maintains and operates a garbage and refuse collection service and a garbage reduction plant, and produces and sells garbage grease and tankage.

(2) Section 2, ch. 139, Acts 1923, §10608 Burns 1926, provides (in part) that:

"It shall be the duty of each such department of sanitation to haul away and dispose of all garbage, that is to say kitchen refuse from cooking food, found in its sanitary district, from private kitchens and the kitchens of all other establishments and institutions, and no other person may lawfully haul away from the place of its production any such garbage produced or found in any such sanitary district, and any other person convicted of such hauling shall be fined for each offense in a sum not greater than twenty-five dollars."

(3-4) Jansen Farms, Incorporated, is an Indiana corporation and for four years has been feeding hogs on a farm two miles from the city of Indianapolis near the Allisonville Pike. It has a modern, sanitary hog-feeding plant, built at a cost of $20,000, which is clear and free from unpleasant odors.

(5) For three years it has purchased from the Claypool Hotel, Thompson's restaurant and the Union Station restaurant all of the food materials left from the tables and from the preparation of food for the tables which materials are specially prepared and collected in large specially made galvanized containers, immediately removed to a room where a low degree of temperature is

maintained, covered with tight fitting lids, and kept free from flies and insects. Containers which have been cleaned and scalded are furnished each day by appellant, and no noxious odors are emitted therefrom. They are collected between 5 and 6 o'clock each morning and removed quickly from the city by automobile trucks which in no way injure the streets or interfere with the traffic.

(6) Appellant keeps on hand 250 young hogs, and the feeding and sale thereof is profitable. Appellant pays the hotel and restaurants for the material collected, and also recovers for them a large amount of silverware, amounting to several thousands of dollars in value each year.

(7) Appellant's collection is done in a sanitary manner, and none of such materials are scattered upon the streets.

(8) The materials collected by appellant are fed to hogs which are specially prepared to be sold to a plant engaged in the manufacture of anti-hog-cholera serum, said materials containing mineral elements and vitamins which give a higher degree of resistance to the virus injected in the course of the manufacture of the serum than grain or commercial hog foods, and produce a superior serum.

(9) Appellee has notified appellant that, unless it stops the collection of such materials, it will be arrested (we assume this to mean that appellant's officers or employees will be arrested). Appellee threatens to interfere and is interfering with appellant in the collection of such materials, and is threatening to take such materials without paying appellant or the hotel or restaurant keepers anything therefor, and appellant would be greatly damaged if appellee would interfere with its collection of said materials.

(10) Appellant, unless restrained, will continue to collect such materials, and, upon demand by appellee,

has declined to cease collecting the same, and the said hotel and restaurants have declined to permit appellee to collect said materials.

(11) Appellee has not collected and does not collect the materials collected by appellant from said hotel and restaurants. If appellee did collect such material, it would treat the same at its garbage-disposal plant and would produce garbage grease and tankage therefrom which it could and would sell for considerable money.

(12) The collection of such materials by appellant is not under the supervision of appellee.

Appellant contends: (1) That the remedy of injunction is not available to prohibit the violation of a criminal law, (a) where no certain property damage exists, or (b) even where property damage is proved, if the Legislature has provided a criminal penalty, which legal remedy is adequate and not exhausted, and (c) where, by the extension of the arm of equity into the field of criminal law, one (appellant) is deprived of "his" right to a trial by jury; (2) that the decision of the court deprives appellant, without just compensation and due process of law (§21, Art. 1, Constitution; §73 Burns 1926), of its property which is not held or used in such a way as to be injurious to the health, peace, morals, education or good order of the people.

Appellant's acts were enjoined, we must presume, not upon the theory that they were violative of that portion of the statute defining a misdemeanor, but, on the theory that appellee, as representing the public, was entitled to prevent the appellant from performing acts which are a menace to the public health or safety, and from engaging in a business which the Legislature, in the exercise of the police power of the state, had lodged exclusively in appellee. *Wolcott* v. *Doremus* (1915), 11 Del. Ch. 58, 101 Atl. 868; *City of Rochester* v. *Gutber-*

*lett* (1914), 211 N. Y. 309, 105 N. E. 548, L. R. A. 1915D 209, Ann. Cas. 1915C 483.

Where an injunction is necessary for the protection of public rights, property, or welfare, the criminality of the acts complained of does not bar the remedy by injunction. *Grand Rapids Board of Health* v. *Vink* (1915), 184 Mich. 688, 151 N. W. 672; *State, ex rel.,* v. *Feitz* (1913), 174 Mo. App. 456, 610 S. W. 585; *State* v. *Ehrlick* (1909), 65 W. Va. 700, 64 S. E. 935, 23 L. R. A. (N. S.) 691; *Barrett* v. *Mt. Greenwood Cem. Assn.* (1896), 159 Ill. 385, 42 N. E. 891, 31 L. R. A. 109, 50 Am. St. 168.

This action is not a criminal proceeding, nor is it a civil action in which a jury can properly be demanded, and it does not deprive appellant of a right to trial by jury under either §13, Art. 1, Constitution, §65 Burns 1926, or §20, Art. 1, Constitution, §72 Burns 1926. See, also, *City of Rochester* v. *Gutberlett, supra.*

We cannot agree with appellee that it has such a property right in the garbage of private individuals and corporations, before the same has been collected, as would give it standing in a court to protect the same.

The power and duty of the state, and municipalities acting by its authority, to control and regulate the manner of the collection and disposition of garbage, refuse, filth, dead animals, manure, etc., exists both under the rules relating to nuisances and to the public health, safety and welfare. The tendency of garbage to ferment rapidly and become a source of annoyance and a cause of disease warrants stringent police regulations, and it is uniformly held that municipalities may require all garbage to be placed in proper receptacles, may prescribe the time and mode of removal and disposition, may provide that it shall have the exclusive

right of removal, or grant the exclusive right to remove the same to one or a number of contractors. One of the earliest and leading cases stating this doctrine is *Walker* v. *Jameson* (1894), 140 Ind. 591, 37 N. E. 402, 39 N. E. 869, 28 L. R. A. 679, 683, 49 Am. St. 222. See, also, *Gardner* v. *Michigan* (1905), 199 U. S. 325, 26 Sup. Ct. 106, 50 L. Ed. 212; *California Reduction Co.* v. *Sanitary Reduction Works* (1905), 199 U. S. 306, 26 Sup. Ct. 100, 50 L. Ed. 204; *People* v. *Gordon* (1890), 81 Mich. 306, 45 N. W. 658, 21 Am. St. 524; *State, ex rel.,* v. *City of Cincinnati* (1929), 120 Ohio St. 500, 166 N. E. 583.

While it is recognized that garbage has a value as food for hogs or for rendering purposes, its value in the past has been considered so slight as compared with the danger to public health, if it is disposed of without restriction, that the courts, on the ground of public policy, have uniformly upheld ordinances which provide for the exclusive collection of garbage, and thus, in effect, deprive the owner of the opportunity of receiving compensation for his garbage, interfere with a source of supply of hog raisers, and destroy the means of livelihood of other scavengers. 19 R. C. L. 824, 43 C. J. 377, 379. "In such circumstances," said the court in *Gardner* v. *Michigan, supra,* "the property rights of individuals in the noxious materials . . . must be subordinated to the general good." See note, "Validity of statutory or municipal regulation as to garbage," to *Pantlind* v. *City of Grand Rapids* (1920), 210 Mich. 18, 171 N. W. 302, 15 A. L. R. 280, 287; also *Wheeler* v. *City of Boston* (1919), 233 Mass. 275, 123 N. E. 684, 15 A. L. R. 275; *Valley Spring Hog Ranch Co.* v. *Plagmann* (1920), 282 Mo. 1, 220 S. W. 1, 15 A. L. R. 266; *Spencer* v. *City of Medford* (1929), 129 Ore. 333, 276 Pac. 1114.

Regulations of this kind must, of course, be reasonable and not arbitrary, and must not conflict with constitutional provisions, 43 C. J. 379.

When the law on this subject began to develop, garbage was comparatively worthless. Being subject to rapid decay, it was required to be given over to the city as a police or health measure, which consideration greatly overweighed any consideration of its value as property. In recent years, the increased price of foodstuffs and feed, and the development of scientific methods of the reduction of fats, have been so great as to make possible a considerable property value in this former waste material, and the development of the science of refrigeration is making it possible to preserve and handle such material so as not to be a menace to health. Such development may result either in a modification of the rule that has grown up (see *Donovan* v. *Town of New Windsor* (1928), 132 Misc. Rep. 860, 231 N. Y. Supp. 82), or in a valuable and harmless part of such product being no longer considered as "garbage."

The ordinary meaning of the word "garbage" is "offal, refuse or waste animal or vegetable matter from a kitchen, market or store, any worthless offensive or filthy matter." 27 C. J. 1107; Century Dictionary; Webster Dictionary. In *Bishop* v. *City of Tulsa* (1922), 21 Okla. Crim. 457, 209 Pac. 228, 27 A. L. R. 1008, the appellant, owner of a number of restaurants, collected the trimmings from meat, fruits, bread and vegetables, together with scraps or leavings from the tables, spread them upon concrete floors and mixed them with meal, bran and oats, making a practically dry mixture, which he placed in cans and labeled "hog food." This was taken by appellant and his associates beyond the city limits, where it was fed to their hogs. There was evidence that the product was sanitary, giving off no offensive odor, and that in extremely warm weather a

small per cent of benzoate of soda was added to arrest possible decomposition. The city garbage disposal ordinance did not define the word "garbage," and the court, giving to that word its ordinary meaning, held that it did not include the "by-product" disposed of by the appellant, since the same was cared for in such a manner as not to interfere with public or private rights, and appellant's right therein amounted to a private property right that cannot be abrogated or destroyed by police regulations.

In the case at bar, the sanitary district law rather narrowly defines "garbage" to be "kitchen refuse from cooking food." The product here involved is not shown to be offensive or harmful as handled, and we cannot extend the definition given in the statute. The allegations of the complaint that appellant is collecting "garbage," and that the irregular collection of such garbage constitutes and is a menace to the health, safety,. comfort and convenience of the people resident in said city are not proved by the stipulations that appellant has purchased and removed in a thoroughly sanitary manner certain food materials which are not waste or refuse or, in the wording of the statute, "kitchen refuse from cooking food." The facts stipulated (constituting all the evidence), are, therefore, not sufficient to support the judgment.

The cross-complaint alleges that the food products collected and hauled away by appellant are not "garbage or kitchen refuse from cooking food," but are "food products left from the tables at the hotel and two restaurants, which have not been abandoned and which are not waste" and are its private property (and that §10608 Burns 1926 would be violative of §21, Art. 1, Constitution, if it sought to prohibit appellant from hauling the same away). The facts stipulated show that the material collected by appellant

was the same as alleged in the cross-complaint. It was not within the terms of §10608 Burns 1926, and the trial court erred in finding against appellant on its cross-complaint.

The judgment is reversed, with directions to grant appellant's motion for a new trial.

Travis, J., dissents.