JOHN EARRUSO AND MARY EARRUSO, PROSECUTORS, v. THE BOARD OF HEALTH OF THE TOWNSHIP OF EAST HANOVER, IN THE COUNTY OF MORRIS, DEFENDANT.

Submitted January 18, 1938—Decided July 11, 1938.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutors, *Thomas Brunetto.*

For the defendant, *Harry Amsterdam (Abraham M. Herman,* of counsel).

The opinion of the court was delivered by

HEHER, J. The point of inquiry is the legal validity of an ordinance enacted on April 13th, 1936, by a body purporting to be the board of health of the Township of East Hanover, in the County of Morris, entitled "An ordinance to regulate the dumping upon or the filling up of vacant lands or any grounds."

The prosecutors, John Earruso and Mary, his wife, ever since the year 1921, have conducted a hog-raising business on their tract of farm lands comprising thirty-two and one-quarter acres, situate on the Whippany River, within the named township, and consisting in part of lowlands and "swamps covered with water the greater portion of the year." They also carry on the business of collecting and disposing of the garbage, ashes, refuse and debris of neighboring municipalities. The collections so made are deposited upon their premises; and the ashes and the like are used for "filling in the lowlands" thereof, and the garbage as food for the hogs, the surplus being "used for fertilizing purposes." They now have three hundred pigs upon the lands; and it is stipulated that they "are unable to gather sufficient garbage to feed their pigs within the township," and that "grain or other food is more expensive, and therefore" they "must bring in garbage from other municipalities." The nearest dwelling is one thousand feet from the pig pens. "Tuttle Manor, a residential development," is within the vicinity.

On July 2d, 1936, prosecutors made application to the board of health for a permit to dump upon their premises garbage, ashes and debris collected in the Township of East

Hanover and municipalities nearby; and the board, by resolution adopted on October 1st, 1936, granted leave to dump only "the garbage, refuse and debris collected by the prosecutors while performing the then existing contracts which they had for the collection of garbage, ashes and debris with other municipalities outside of East Hanover township." One of these contracts, made with the borough of Roseland, in the county of Essex, does not expire until 1940. Since the adoption of the ordinance, prosecutors have entered into a contract with the Town of Morristown for the removal of its garbage.

*First:* The first insistence is that the ordinance is a nullity for the reason that, at the time of its adoption, the body so exercising the functions of a local board of health had no legal existence. We find it to be devoid of substance.

The Township of East Hanover was incorporated by chapter 31 of the laws of 1928. *Pamph. L., p.* 50. While the record is deficient in this respect, it seems to be conceded that a board of health was properly constituted under the provisions of section 10 of chapter 68 of the laws of 1887, page 84, as amended and supplemented (*Comp. Stat.* 1910, *p.* 2662; *Rev. Stat.* 1937, 26:3-9), consisting of the members of the township committee, the township assessor, and a physician appointed by the township committee. Chapter 33 of the laws of 1923 (*Pamph. L., p.* 66; *Rev. Stat.* 1937, 26:3-10) was not applicable. The population of the township then was, and still is, less than twenty thousand inhabitants.

However, on June 2d, 1932, the municipal governing body, pursuant to the authority conferred by chapter 312 of the laws of 1926, later amended (*Pamph. L.* 1926, *p.* 522; *Rev. Stat.* 1937, 40:87-17, *et seq.*) adopted an ordinance abolishing the office of assessor and creating a board of assessors consisting of three members. Upon the organization of this newly created body, the township clerk was designated as the fifth member of the board of health, succeeding the assessor whose office had been abolished, in the exercise of what was conceived to be the authority conferred by the provision of section 10 of the act of 1887, *supra,* that, "in case of the

death, removal or resignation of any assessor before the time of electing his successor, the township clerk shall succeed such assessor as a member of such local board, and shall continue as such member until an assessor shall be duly elected or appointed;" and the insistence is that the township clerk, by force of the statutory provision adverted to, assumes membership in the board only in case of the "death, removal or resignation" of the assessor, and then only until the election of a successor to the assessor, and that not being the case here, the board ceased to have legal existence, and the ordinance under review is therefore void. It is said that, in such circumstances, the municipal governing body was at liberty to organize a new board comprised of seven members under section 9 of the act of 1887, *supra*. This contention proceeds upon the assumption that a board of five members being impossible under section 10 of the act of 1887, *supra,* by reason of the creation of a board of assessors consisting of three members, such a board could only be established under section 9, providing for a board of "not less than five nor more than seven members." But section 9 plainly does not deal with the creation of local boards of health in the several townships of the state. That is the office of section 10. The clarifying language of the Revision of 1937 affords ample demonstration that this was the original legislative purpose. *Rev. Stat.* 26:3-3, 26:3-9, *et seq.*

The record does not disclose that the township clerk actually functioned as a member of the board of health, or in anywise participated in the proceedings touching the adoption of the ordinance under review. Even so, he was a *de facto* officer. It is not suggested that, by force of the act of 1926, *supra,* the classification became illusory in the constitutional sense, in that section 10 of the act of 1887, *supra,* thereby became applicable only to townships which failed to adopt a board of three assessors under the act of 1926, *supra.* But even on that hypothesis, as also on the supposition that section 10 of the act of 1887 was no longer applicable to this particular municipality, the board itself had at least a *de facto* existence. It concededly exercised public functions

under color of right; and it had the reputation of being the public agency it professed to be and of possessing the authority vested by law in such bodies. And it is the settled rule that, where the public need or convenience or the rights of innocent third persons so dictate, the acts of a *de facto* public body, functioning within the allotted sphere, are treated as valid. The public interest is served by the recognition of its acts in the discharge of functions conferred by law upon like bodies having *de jure* existence. *State, ex rel. Mitchell,* v. *Tolan,* 33 *N. J. L.* 195; *Jersey City* v. *Erwin,* 59 *Id.* 282; *reversed, sub nom. Erwin* v. *Jersey City,* 60 *Id.* 141; *Oliver* v. *Jersey City,* 63 *Id.* 634; *Lang* v. *Bayonne,* 74 *Id.* 455; *Harrison* v. *Madison,* 81 *Id.* 21; *affirmed,* 82 *Id.* 527; *Hyman* v. *Long Branch Kennel Club, Inc.,* 115 *Id.* 123; *von Neida* v. *Bennett,* 117 *Id.* 231. And compare *Mueller* v. *Egg Harbor City,* 55 *Id.* 245; *State* v. *Van Winkle,* 25 *Id.* 73; *State* v. *Donahay,* 30 *Id.* 404; *State* v. *Goodfellow,* 111 *Id.* 604; *Murphy* v. *Ellenstein,* 119 *Id.* 159. It goes without saying that a regulatory ordinance reasonably deemed essential for the protection of the public health falls into this category.

*Second:* And we discover no merit in the claim that the ordinance, as respects the prosecutors, contravenes the provisions of paragraphs 1 and 16 of article I of the Constitution of New Jersey and the Fourteenth Amendment of the Federal Constitution, in that "it is an attempt to deprive or limit the prosecutors in the use of their property without compensation and due process of law," and "deprives" them "of the right to earn a livelihood by conducting a piggery" upon their premises.

Section 3 of the ordinance provides that no permit shall be necessary for "the deposit by a resident" of the township of garbage or refuse "resulting from the use and occupation of his own premises;" and it is contended that this limitation operates to divest prosecutors of "the use of their farm for the purpose of raising hogs which are fed by garbage collected by other municipalities," and that this is an indefensible invasion of the right of private property. This view we find to be untenable.

We advert to kindred statutory provisions to exhibit the comprehensiveness of the delegated powers.

By article XXIII, section 1, of the Home Rule act of 1917 (*Pamph. L.* 1917, *pp.* 319, 408; *Rev. Stat.* 1937, 40:66-1), the governing body of the municipality was invested with "power to provide * * * for the collection, removal and disposal of ashes, garbage and other refuse, and to establish and maintain a system therefor;" and by section 7 of the same article the authority of any municipality to acquire lands outside of its corporate limits, as "a place of deposit for" its "indestructible waste," was conditioned upon "the consent of the governing body and of the board of health of the municipality in which such land is situate." And the local boards of health were clothed with general authority to enact ordinances and make rules and regulations "in regard to the public health * * * for the following purposes," among other things: "To regulate, control and prohibit the accumulation of offal and all decaying or vegetable substances." This provision has been carried into the Revised Statutes under the label "Offal and Garbage." *Comp. Stat.* 1910, *p.* 2663, as amended by *Pamph. L.* 1924, *p.* 302; *Rev. Stat.* 1937, 26:3-31. The last provision is a clear and explicit grant of the authority here exercised.

These provisions constitute a delegation to the several municipalities of the state's essential reserved power to safeguard the public health and the vital interests of the people. The right of private property of necessity yields to the common social need. The sovereign police power may be exerted when demanded by the collective interest; and the correlative restraint upon the individual is presumed to be off-set by the reciprocal compensatory benefits accruing to him as one of the public at large. It is a fundamental obligation of the social compact to endure burdens that are mere incidents of measures reasonably designed to serve the essential common interest. The negation of this proposition denies the validity of society as a necessary end in itself, the better to serve the individual interest. It is of the legislative function to determine the existence of the need; and, in the absence of arbi-

trary or capricious action, the individual landowner has not just cause of complaint. *Mansfield & Swett, Inc.*, v. *Town of West Orange*, 120 *N. J. L.* 145.

We discern no basis for the claim that the ordinance under review constitutes an unreasonable exercise of the police power. The responsible public agency has found the need; and, in the absence of a clear showing of arbitrary action, we are not at liberty to vacate it. The enactment is on its face addressed to a lawful end. Control of garbage and decaying vegetable and like matter is indispensable to the public health, safety and comfort. *Atlantic City* v. *Abbott*, 73 *N. J. L.* 281; *Wogish* v. *Board of Health of Moonachie*, 114 *Id.* 261. See, also, 15 *A. L. R.* 301.

The writ is accordingly dismissed, with costs.