DOUGHERTY, A TAXPAYER, APPELLANT, *v.* FOLK, MAYOR, ET AL., APPELLEES.

(No. 1987—Decided October 16, 1941.)

*Mr. H. C. Pontius* and *Mr. John F. Locke,* for appellant.

*Mr. P. G. Weber,* for appellees.

SHERICK, J.   This is a suit in equity by a taxpayer, who seeks to enjoin the board of control of the city of Canton and its director of public service from advertising for bids and entering into a contract for the collection and disposal of garbage by incineration, previously authorized by an ordinance of council, passed on June 17, 1940.

A temporary injunction was granted. Upon trial the court refused to make the same permanent. From this decree the plaintiff appealed on questions of law and fact, and the suit is tried in this court on the record made in the court of first instance. The issues raised by the pleadings and evidence will be considered under their several topics, without a general enumeration thereof. This order will best develop the various matters in controversy.

It is first advanced that the ordinance has a dual

purpose inasmuch as it treats not only of collection, but also of disposal of garbage. It is therefore said to legislate upon more than one subject and is contrary to the provision of Section 4226, General Code. It has been said, 28 Ohio Jurisprudence, 439, Section 276, citing *Heffner* v. *City of Toledo,* 75 Ohio St., 413, 80 N. E., 8, that a claimed violation of the statute is to be tested "in the light of the mischief the statute was intended to prevent." And it has been determined that the statute "is not violated by the inclusion of matters which are germane to the general subject." Both excerpts refer to the subject of the ordinance. In the present ordinance, garbage is the subject being legislated upon, just as was done in Section 3649, General Code, which grants authority not only "for the collection and disposition of * * * garbage," but also "to establish, maintain and regulate plants for the disposal thereof."

What mischief was Section 4226 to correct? The answer is a simple one. If one subject only was legislated upon at a time, members of council might be advised of its subject-matter and act upon it unvexed by other unrelated subjects. It made for speedy action, clarity and understanding by the legislator and the public, and denied passage of measures which could not otherwise be enacted, except as riders to popular measures. But it was not intended that municipal councils should be confined in straight jackets. What is expressed in *Heffner* v. *City of Toledo, supra,* is an excellent and complete answer. The court said:

" 'To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible.' "

To the same end see *Plummer, a Taxpayer,* v. *Village of Swanton,* 133 Ohio St., 623, 15 N. E. (2d), 349; and *State, ex rel. Moock,* v. *City of Cincinnati,* 120 Ohio St., 500, 166 N. E., 583.

Undisposed of garbage is just as offensive as uncollected garbage. To think and to act upon one without consideration of the other is hardly plausible. This is specially true in city of Canton's case, because it is moving to free itself of the practice of feeding its garbage to swine and because it has no incinerator. The present ordinance has but one general subject.

The next bone of contention lays in appellant's insistence that the ordinance is in violation of Section 4227, General Code. He urges that it is one of a general nature and provides for a permanent improvement, and not having been published, it is not as yet in full force and effect.

Just what is an ordinance of a general nature? These words are rather difficult to define as they may be applied to specific matters. Per example, penal ordinances are of a general nature. They affect all the people who have a right to know just what they are supposed to do or not do. If all of the people in a municipality or a district are to bear the burden of an improvement, they are vitally interested and are entitled to notice. True, the people are interested in removal of garbage, but as a whole, they are not interested directly, financially or otherwise, in the manner in which it is done. If a bond issue were to be determined upon for the construction of an incinerator, they would be generally interested, but such is not here the case. The fact that the city, out of foresight and caution, proposes to acquire the plant as lessee from the successful bidder, if it fails to perform the contract, or upon option take it over at the expiration of the contract period, does not make the ordinance

of a general nature, because such probability may never transpire. Collection and disposition of garbage, by a successful bidder in his own plant is neither the granting of a franchise over city streets, nor the making of a public improvement, as claimed by plaintiff, but is nothing more than the performance of a health and sanitary measure in a well ordered municipality, by its officers, out of its general fund or charges made against those who use the service provided.

The ordinance is said to violate the provisions of Section 4211, General Code, in that council has delegated its powers of legislation to the board of control. The ordinance is short. It authorizes the director of public service to advertise and receive bids and to enter into a contract for the collection and incineration of garbage in accordance with the plans and specifications on file in his office. It made no mention of any of the matters that would be the proper subjects of such a contract. The plans and specifications were not then on file, but were filed in the director's office at and during the time of advertisement to contractors. The plans and specifications are some thirty pages in extent. They minutely cover the collection and disposal of garbage. They specify the kind of incinerator plant which the contractor is to build, and how it may be acquired by the city in case of default and expiration of contract, the wage scale to be paid to its employees, and many other provisions such as size of cans, wrapping of garbage, compulsory collection, gathering of rubbish, and a guaranty by the city of 8,000 customers.

Plaintiff's counsel urge that all these matters and things should have been legislated upon by council in the ordinance and not left to the director and board of control. The city answers that these things are purely matters of detail and administration, and council hav-

ing confidence in its administrative officers, wisely left these things to them for solution. The city says that many of these contract requirements are not proper subjects of legislation, and that council will act when the time and need require; and that if it had legislated, as appellant suggests, it would undoubtedly have stifled public bidding for the reason that incinerator plants are not as yet standardized, and if the ordinance had been so drawn and passed, this detailed legislation might have been entirely useless, if the incinerator project failed of accomplishment.

We think the city has the better of this argument. In *City of Akron* v. *Dobson*, 81 Ohio St., 66, 90 N. E., 123, the court holds that requirements are met by an ordinance which states the purpose generally, makes necessary appropriations and directs the making of a contract. The court concludes its thought with this observation:

"If the directors do not have or retain the confidence of the council, it is in the power of the council to be more specific."

Appellant, however, directs our attention to *Cincinnati* v. *Cook*, 107 Ohio St., 223, 140 N. E., 655, but this authority is readily distinguishable, because council therein attempted to delegate power to a railroad company to regulate parking. The company, of course, was not a municipal agency, board or officer of the city.

It seems to us that the statute is not violated by the ordinance. The city's reasons advanced are sound and should and do warrant a liberal interpretation of the statute's purpose.

The fourth complaint of the taxpayer is a broad and sweeping generality. It is like a shot from a blunderbus. It is asserted that the means employed and the manner of doing the whole thing "is an attempt to

circumscribe the statutes controlling the method of letting public contracts.'' We do not believe that this is so. This we have hereinbefore attempted to demonstrate. Previous arguments are regathered and restated, together with the assertion that the Uniform Bond Act is violated. We do not think so, inasmuch as an improvement is not contemplated to be paid for by a bond issue.

Appellant's fifth claim for injunctive relief is that the plans and specifications are indefinite and confusing and prevent a definite enforcible contract. The first portion of this statement is undoubtedly true to one who lacks knowledge of the necessities incident to garbage incineration; but such a truth does not make the ordinance and the proceedings thereunder indefinite or incapable of being the subject of an enforcible contract. To incinerator minded contractors, the matters may be and no doubt are perfectly understandable. We encounter the same situation with respect to many statutes which relate to specific technical subjects that a person of average intelligence does not understand, but are clear to those possessed of technical knowledge of the subject legislated upon.

The objection is divided into three branches: First, the wage provision is questioned, because the specifications prescribe that incinerator employees shall be residents of Canton, and that present garbage employees shall be given preference of employment and shall be paid a wage equal the prevailing Canton wages for like work, and in case of change the proposed wage scale shall be submitted to council for approval and adjustments. It is said the proposed contract clause will be and is indefinite. Such covenants in public contracts are not now novel provisions. Like clauses are now found in most federal improvement contracts. The city is interested in its

working population. It is sound judgment to see that a successful bidder's employees are paid a living wage, and a wage on a par for like services rendered the city, so that employees may be equally compensated, discontent and strikes avoided, and the contracting parties deal fairly with each other during the life of the agreement.

The second claim of indefiniteness is predicated on the basis of the bid. This is said to be confusing. Appellant is troubled over the term customers, and the 8,000 guaranty, and the charge to be paid for the service to be rendered. This seems to us to be a matter for future council action, if the bid is accepted. The successful bidder will be little concerned with the source from which his compensation comes. He will be concerned with the certainty of payment. Council may charge the user for the service or it might determine that the 8,000 user guaranty is to be paid out of the city's general fund. This is in fact a subsequent matter for council to decide and not a matter of indefiniteness in a contract to be entered into between the city and the successful bidder.

The third objection complains of the right of the city to change items of the plans and specifications. It is said to be against public policy. We perceive no merit in this position. It is a usual provision of public contracts. If this were not so, inaccuracies in plans might be insisted upon, when it is learned that to do things in a certain way is wrong. Wise men change their plans when they are discovered to be wrong. Cities should have the same right. This clause simply guards against errors which may thereafter appear and for their correction. It is not indefinite or against public policy.

It is contended that sufficient time was not allowed prospective bidders to secure data and figures so as

to submit a competitive bid. Seventeen days were allowed. Two bids were received. Section 4211, General Code, was complied with. Here again necessary time is to be measured by that required by persons experienced in incineration and not by that required by persons unfamiliar with matters of that kind.

The final complaint of the plaintiff is directed towards the bid submitted by the low bidder. It is maintained that the detailed data furnished by the bidder does not conform to the plans and specifications, but in fact modifies them, and hence the plant which the bidder proposes to construct is not the type specified but that which the contractor proposes to build. The chimney and tie-rods are particularly stressed.

The city replies that there are five types of incinerators on the market, but that the specifications of one producer was not adopted by the city, for the obvious reason that if such had been done competitive bidding would have been eliminated, because only one producer could have complied therewith. The city's plans and specifications were purposely drawn in a general fashion and bidders were asked to supply detailed information with their bids. The city's plans and specifications were to be amplified by the contractors' bids, and it advised of just how the contractor proposed to comply with the city's specifications. Each producer employs the same general process, but not the same detail in construction. This the city recognized. Just what do the city's plans and specifications rigidly require? The answer is that a contractor's bid shall contain in minute detail in just what manner the bidder proposes to build the plant. The city is interested particularly in being advised of two things, that the bidder agrees to conform to the general plan, and that the plant when built in accordance therewith will efficiently perform the work which the city shall require

of it. In other words, the city requires of a bidder that his proposal shall be a substantial compliance with that which the city needs and which by its plans and specifications is demanded.

It is inconceivable that inconsequential departures will not appear. That is the usual thing which happens in appliances contracts. This happens daily in the purchase of motor vehicles. They generally conform on basic principal, but differ in detailed construction. Our judgment is that the plans and specifications do not conform with a bidder's proposal when the latter conflicts with the former and a different general plan is proposed in lieu of the city's general requirement. But every departure in detail is not non-conformity or conflict.

We have examined the bid in question, the city's plans and specifications, and the evidence, and we do not find non-conformity to exist. The bidder does not detail the chimney. It agrees to construct it in accordance with the city's requirement. The tie-rods measurements are not serious discrepancies. In the bidder's specifications some are smaller than the city's specifications called for. Others are larger. Here is a pertinent example of divergence in detail, but if the unit in toto, proposed to be erected, generally conforms to the city's needs and will substantially perform the service which the city requires, non-conformity between plan and bid does not exist.

It is the judgment of this court that plaintiff is not entitled to the relief prayed for. The temporary restraining order is dissolved and the petition dismissed.

*Decree accordingly.*

LEMERT, P. J., and MONTGOMERY, J., concur.