THE STATE, EX REL. BRUMMETT, *v.* BOARD OF HEALTH OF CLERMONT COUNTY ET AL.

(No. 269—Decided May 28, 1959.)

*Mr. Richard C. Curry* and *Mr. Donald A. Fisher,* for relator.
*Mr. Ralph A. Hill* and *Mr. Robert A. Jones,* for respondents.

O'CONNELL, J. This is an action originating in this court for a writ of mandamus filed by the state of Ohio on the relation of Caleb Brummett, against the Board of Health of Clermont County, Ohio, and other respondents. The relator says that he is the owner of certain land in Clermont County; that on Sep-

tember 8, 1958, he obtained from the board of health a license to operate a sanitary land fill and that the license expired on December 31, 1958; that he made application for a 1959 license before December 31, 1958, but the application has not yet been acted upon; and that the Health Commissioner of Clermont County and the chief sanitary officer of the county have stated that no permit will be issued to any person to operate a land fill in the county. Relator says further that the above-mentioned officers have refused to inform the relator of the grounds upon which the refusal is based.

Relator says also that he has the land and equipment to operate such land fill; that on December 17, 1958, the said board of health ordered all land-fill operations to cease on or before January 17, 1959; that he has made numerous contacts to dispose of garbage; and that the actions of the officers are arbitrary and unreasonable.

His prayer is that this court issue a writ of mandamus requiring the respondents to issue a license to the relator, or to show cause for failure to issue such license, and that there be issued against respondents a temporary injunction, restraining them from interfering with the operation of the said sanitary land fill.

The respondents, for their answer, admit the position of trust occupied by them, and that the District Board of Health of Clermont County issued a permit to the relator on September 8, 1958. They furthermore admit such matters set forth in the petition as may be verified by the duly authenticated records of Clermont County. They deny the rest of the allegations of the petition. Their prayer is that the writ of mandamus be denied.

On direct examination, the relator testified to the following:

1. That he had obtained the permit on September 8, 1958.

2. That, with Mr. Frazier, the sanitarian for Clermont County, he had inspected his land-fill property and that Mr. Frazier had approved of the sites.

3. That the board of health had not complained about his operation of the land fill.

4. That the board of health had refused all permits for 1959, but that they had extended the 1958 permit to January 17, 1959.

5. That the relator had made an application for a new land-fill license to operate on the top of a hill above his previous locations.

6. That he was the owner of this property on the top of the hill.

7. That he had bought equipment for the operation and that he was in charge of the operation.

8. That the trash was always covered except when the ground was frozen, and when his equipment had been sabotaged.

9. That the equipment was repaired as soon as possible.

10. That meanwhile the dumping went on.

11. That the office of the board of health refused a fee for the 1959 permit.

Under cross-examination, the relator said:

1. That he was at the land fill irregularly.

2. That there was some salvage of the operation of the garbage, but that he did not know how the salvaging was done or who carried away what had been salvaged.

Mr. Joseph Asher testified:

1. That he had been employed by relator since the land fill was in operation.

2. That the sanitarian of Clermont County said the equipment of the plaintiff was adequate.

3. That the said sanitarian had informed Mr. Asher of complaints from the neighbors.

4. That the complaints concerned the loose paper that the wind had blown onto their premises.

5. That the trash had been carried away within forty-eight hours, except on one occasion when the ground had been frozen, and on another occasion when the machine had been tampered with.

On cross-examination, Mr. Asher said:

1. That on numerous occasions an inspector from the board of health had visited the premises.

2. That the inspector often told the relator that the board of health had been complaining.

3. That the salvaged material was moved sometimes every two days; sometimes once a week.

Mr. S. Ralph Frazier, on cross-examination by the relator, testified:

1. That he was the sanitarian for the Clermont County Board of Health.

2. That he had inspected the first bottom land and the land on top of the hill.

3. That a land fill could be operated on top of the hill, but that there would be difficulty in reaching it.

4. That, on the basis of past experience on the lower ground, he did not think he would recommend the issuance of a permit.

5. That he did not think the relator could afford to construct the type of road which would be adequate to cover the hill, in view of the amount of garbage that would be going up and down the hill.

On cross-examination by the relator, James C. Spence said:

1. That he was the Health Commissioner for Clermont County.

2. That no action had been taken on any application for land-fill operation licenses that had been filed for 1959.

3. That the land-fill operators have not complied with the board of health rules, and that the present plans call for considering the advisability of having the county commissioners or the township trustees take over the operation of land fills.

On direct examination, Mr. Frazier said:

1. He had visited the land fill of the relator on numerous occasions and had found garbage dumped onto the ground; that it was scattered over the entire area; that wind-borne paper had been blown around; and that the general appearance of the land-fill site was very bad.

2. That he had made a report to the board of health on December 17, 1958, in which he spoke of the land-fill operations of the respondent as follows:

" 'Trenching is not as deep as expected due to high water table; however, compaction and coverage can be accomplished.

" 'This has been a spasmodic operation and difficulty has been experienced attempting to get him to operate properly.

" 'Garbage on many occasions has been left uncovered and scattered over a large area over night and an extensive salvage operation has been the primary purpose. Equipment first used was a small front end loader type dozer which was broken down

on various occasions, leaving garbage and refuse out for several days. He later obtained a very small dozer which was definitely not satisfactory.

" 'Dumping has been anywhere the trucks stopped, making it necessary to remove refuse a considerable distance into hole. Paper was windblown and scattered over entire area as no fences were provided to prevent paper from scattering or being blown over the surrounding area. On several trips to this dump at various times of the day no one was present.

" 'Due to light equipment and small area where they are now operating the capacity of garbage they can handle is limited.' "

3. That he had made complaints about this condition to Mr. Asher in which he had spoken of "improper coverage, improper compaction, leaving it lying around and scattered over the area instead of trenching and dumping it into the trenches in a progressive manner, and covering or compacting as they went along."

4. That he made these complaints several times.

Mr. Hawley Todd, on direct examination, testified:

1. That he was a member of the board of health.

2. That he had visited the land fill of the plaintiff which he described as being poorly maintained.

3. That at a meeting of the board of health on December 17, 1958, he had made a motion to refuse permits for 1959, but to extend the time of the 1958 permits to January 17, 1959.

As exhibits, there were introduced into the evidence a copy of the Regulations and Mode of Operation of Sanitary Land Fills; a report of inspection of the Brummett dump, on January 21, 1959; a copy of the sanitary regulations providing that certain establishments, stands and equipment used in and for services to the public shall not be operated except under permit; a copy of the resolution concerning sanitary land fills, as taken from the minutes of the Clermont County Board of Health, held on December 17, 1958, in which it was declared that certain permits (including that of the relator) be revoked and the revocation become effective in thirty days; and a report of the inspection of the Brummett land fill on December 8, 1958.

In this entire matter, the sole question to be decided is

whether the action of the Board of Health of Clermont County in refusing to issue permits for sanitary land-fill operations for 1959, including the permit of the relator, and in bringing to an end these operations on January 17, 1959, has been a failure on the part of the board of health to perform the duties incumbent on it by law, and whether its action in refusing to grant such permit to the relator for the year 1959 is arbitrary and unreasonable.

A board of health, as its name indicates, is an administrative body whose chief duty is to protect the general health of the community. A board of health has the right to adopt rules and regulations to carry out its functions of health protection, and such rules, unless they be found to be unreasonable, have all the force of law. The evidence in this case discloses that the rules of the Clermont County Board of Health provide for the operation of sanitary land fills, and for the revocation of the permit of any operator who violates any of the regulations.

Now, if the relator had clearly not violated any of the provisions of its rules and if the relator's permit had been revoked, the board and the other respondents would have failed in their duty and an action in mandamus would lie. And, indeed, the action of the board and the other respondents, under these circumstances, would have been arbitrary and unreasonable. But the evidence, though contradictory, raises a strong presumption of failure to comply with the rules, and the burden of proof of adherence to the rules rests on the relator. This court is of the opinion that this burden was not adequately sustained by the relator. It can hardly be said that the action of the board and the other respondents was arbitrary. The word, "arbitrary," is defined by Webster's New International Dictionary, unabridged, 1959, as "fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance, or given to making decision thus; decisive but unreasoned." Nor can it be said under the circumstances that the board and the other respondents failed to perform their duties imposed by law upon them, these duties being primarily to conserve the health of the community.

These conclusions are in accord with the decision reached

in *Jansen Farms, Inc.*, v. *City of Indianapolis*, 202 Ind., 138, 171 N. E., 199, 72 A. L. R., 514, wherein, in paragraph four of the syllabus, the court held:

"The power and the duty of municipalities to control and regulate the manner of the collection and disposition of garbage, filth, dead animals, etc., exists under the rules relating to nuisances and under the police power relating to public health, safety and welfare."

These conclusions are also in accord with the holding of the court in *State, ex rel. Moock*, v. *City of Cincinnati*, 120 Ohio St., 500, 166 N. E., 583, wherein it was held, in paragraph one of the syllabus:

"The adoption of regulations pertaining to health and sanitation, including the process of collection and disposal of garbage, is within the proper exercise of the police powers of the state and of its municipalities."

That these conclusions are also in accord with the existing law is apparent from the statements found in 39 Corpus Juris Secundum, 854, Section 28, and the cases referred to therein, as follows:

"Regulations and actions of local health authorities respecting the collection and disposal of such substance [garbage, etc.] will be upheld in the absence of a showing that they are arbitrary or capricious."

It was held in *Earruso* v. *Board of Health of Township of East Hanover*, 120 N. J. Law, 463, 200 A., 755, paragraph four of the syllabus:

"When a duly constituted public agency is empowered, in the exercise of the police power, to provide for the preservation of the public health of the community by regulating the deposit and disposal of garbage and other refuse matter, and such agency has found the need to perform this duty in a certain manner, an ordinance enacted by it in the furtherance of such duty will not be vacated, except on a showing of arbitrary action, especially, when the enactment on its face is addressed to a lawful end."

Likewise, 39 Corpus Juris Secundum, 854, Section 28, states that:

"Sanitary authorities with power to regulate the removal

and disposal of garbage may reserve to themselves the exclusive right to remove garbage within the territorial limits of their jurisdiction * * *.''

In *In re Sozzi*, 54 Cal. App. (2d), 304, 129 P. (2d), 40, it was held:

''The sanitary district, being authorized 'to make and enforce all necessary rules and regulations for the removal of garbage,' and 'to do any act necessary or proper to the complete exercise and effect of any of its powers, or for the purposes for which it is formed,' may reserve to itself the exclusive right, through its own agents or employees, to collect garbage within its limits * * * and * * * it is well settled that a municipality may reserve to itself, through its duly authorized employees, the exclusive right to remove garbage accumulating within its limits, or may grant to one person such exclusive right * * *.''

Also, in *City of Indianapolis* v. *Ryan*, 212 Ind., 447, 7 N. E. (2d), 974, 135 A. L. R., 1300, according to paragraph five of the syllabus:

''Government has power to regulate and control the collection and disposal of garbage without first establishing that such matter is offensive or harmful as handled by private persons, since a uniform system is deemed necessary to protect the public health.''

Finally, in 39 Corpus Juris Secundum, 854, Section 28, it is said that ''* * * and they [sanitary authorities] may confer such rights on a single person to the exclusion of others.''

It is, therefore, the opinion of this court that the Board of Health of Clermont County, Ohio, has the right to make rules and regulations for the preservation of the health of the community; that it has the right to grant and revoke licenses in the matter of health preservation, including licenses to operate sanitary land fills; that it may, in its discretion, give such licenses to whomsoever it deems best suited for such operations; that it may, in its discretion, operate these land fills itself, or through a single operator; that its decisions must be through the exercise of sound judgment and not through caprice, prejudice, or arbitrariness; that the relator was carrying on his business solely at the discretion of the board of health; that the

board of health was the sole judge of his fitness for the work; that there is evidence that the relator was not carrying on the work in accordance with the rules of the board of health; and that the board of health did not act arbitrarily or unreasonably in revoking his license and in not granting a new license for the year 1959.

The court, therefore, dismisses this action at the costs of the relator, and an entry may be presented in accordance with this opinion.

*Writ denied.*

MATTHEWS, P. J., concurs.